GROSSMAN et al. v. JONES.

No. 11055.

Court of Civil Appeals of Texas. San Antonio.

Nov. 26, 1941.

Rehearing Denied Jan. 7, 1942.

Samuel Peterson, of San Antonio, for appellants.

Frank W. Nesbitt, of Corpus Christi, for appellee.

MURRAY, Justice.

This suit was instituted by Dudley Jones against Simon Grossman and Ed Grossman seeking to recover the sum of $1,500, alleged to be the value of certain improvements placed by Jones on Lots 11, 12, and part of 10, in Block 75, Bluff Portion of the City of Corpus Christi, and alleged to have been converted by Simon and Ed Grossman.

The trial was to a jury and judgment was rendered, upon the jury's answers to the special issues submitted, in favor of Jones in the sum of $515, from which judgment Simon and Ed Grossman have prosecuted this appeal.

Appellants, by their points one and two, complain of the alleged error of the court in not giving them an instructed verdict and later in not rendering judgment in their favor non obstante veredicto. We overrule these points. The evidence shows that on March 31, 1930, Rafael Galvan was the owner of the east part of Lot 10 and all of Lots 11 and 12, Block 75, Bluff Portion of the City of Corpus Christi, in Nueces

County, with certain improvements thereon, subject to a contractor's and deed of trust lien securing an indebtedness held by the Pickering Lumber Company. On that date Galvan and his wife executed a deed conveying the premises to Pickering Lumber Company, and on the same date repurchased the lots under a conditional sales contract.

On August 11, 1933, Galvan and Dudley Jones entered into a written lease covering the northwest portion of the premises, for a term of one year. This lease contained the following provisions: "Lessor agrees and gives Lessee consent to remove any improvements he might put on the property while this or any subsequent lease is in effect." This lease was recorded in the Deed Records of Nueces County, but the acknowledgment was defective.

On February 28, 1934, Galvan and Jones executed an instrument extending the lease for two years from August 15, 1934, and containing a provision to the same effect with reference to removal of improvements. The instrument also contained an option for an extension of the lease for two additional years. This lease contract was not recorded.

At the time the lease was entered into the improvements on the lots consisted of a large structure, the rear portion being a barn-like framework of 4x4 timbers and 2x4 braces, covered with galvanized iron on top and sides, but without ceiling, inside walls or floor, except a concrete slab to wash cars on, and without partitions. In the front, on the southwest corner, was a hot tamale stand, and at the southeast corner a barber shop.

At or soon after the expiration of the lease for one year, an oral lease was entered into between Galvan and appellee, Jones, taking in a portion of the premises adjoining on the east the portion already leased. Appellee, under this oral lease, was to have permission to remove his improvements on this additional portion.

While these various leases were in effect, appellee made improvements upon the premises, consisting of inside walls, floors, ceilings and partitions. Six and eight penny nails were used so it would not injure the building to detach the walls. The floor in the dance hall was attached to joists which rested on piles of bricks laid on top of the ground, and extended under the walls without being nailed to them. Lavatories and electric and other fixtures were installed in the building, also windows and doors.

On May 23, 1936, the Pickering Lumber Company executed a deed of said premises to the Pickering Lumber Sales Company, which deed was duly recorded. This instrument also transferred to the grantee all interest in the sale contract with Galvan. The Pickering Lumber Company and the Pickering Lumber Sales Company were separate corporations, but had generally the same officers, stockholders and employees, and at times they were treated as one and the same corporation.

On July 27, 1938, Galvan and wife executed a quitclaim deed to the Pickering Lumber Sales Company of all their interest in said premises, which deed was duly recorded. Appellee, Jones, was in possession of the premises, as a tenant, during all of these transactions and no one from the Pickering Companies made inquiry of him as to the terms of his lease, nor is it shown that such Companies had any actual knowledge as to what the terms of his lease contracts were.

On Monday after the execution of the quitclaim deed, Galvan took the bookkeeper of the Pickering Lumber Sales Company to the premises and introduced him to the tenants, from whom he should collect the rents, and told him that appellee, Jones, owned the improvements in the back. Some time later the vice president and general manager of the Pickering Lumber Sales Company went to the premises and was informed by one Walter Roberts, who was employed by appellee, Jones, that appellee owned some of the improvements in the rear. Appellee paid rent to the Sales Company.

On July 31, 1939, the Sales Company conveyed the premises to appellants, Simon and Ed Grossman, by deed duly recorded. Simon Grossman, who handled the transaction, made no inquiry of appellee as to what his rights in the premises were and had no actual knowledge of such rights. Grossman knew that Jones was in possession of the premises at the time he purchased them. In July or August, 1939, a representative of the Sales Company brought Grossman to the premises and instructed appellee to pay the rent thereafter to Mr. Grossman. The rent was to be the same and nothing was said about a new lease contract. On October 27, 1939, appellee decided to vacate the premises and

began removing the improvements he had placed upon the premises, but was stopped by the Grossmans, hence this suit for conversion.

■ Under such facts the trial court did not commit error in refusing to instruct the jury to find for the Grossmans.

■ There can be no doubt but that appellee, Dudley Jones, had a perfect right under his lease to remove the improvements he had placed upon the premises, inasmuch as they were only lightly attached to the frame building and could be removed without injury to the realty, unless the Grossmans are protected as innocent purchasers. Menger v. Ward, Tex.Civ.App., 28 S.W. 821; Sanders v. Lefkovitz, Tex.Civ.App., 292 S.W. 596.

■ It is true that the original lease was not properly acknowledged and was therefore not constructive notice to appellants, but appellee was in open and obvious possession of the premises, which fact seems to have been well known to appellants. Such possession was notice to appellants of the rights of appellee in and to the premises. No doubt if Grossman had made inquiry of appellee he would have been informed of appellee's right to remove the improvements. Appellants cannot take advantage of their own failure to make proper inquiry of a person in open and obvious possession of the premises they are undertaking to purchase.

■■ Appellants contend that inasmuch as Galvan could not have removed any improvements which he might place upon the premises that therefore his tenant, Jones, could have no greater rights than Galvan himself would have had. Even though it be true that Galvan could not have removed any improvements which he might place upon the premises, unless he had an agreement with Pickering Lumber Company to that effect, nevertheless Galvan's agreement with Jones is valid. The law is well stated in 26 Corpus Juris, p. 688, as follows: "(56) b. Vendor of Land. An agreement with a purchaser of land in possession thereof for the removal of articles or structures placed on the land during such possession has ordinarily been given effect as against the vendor of the land, claiming them on the purchaser's default, provided, at least, the removal will not involve substantial injury to the realty, and provided the vendor of the land has not made any advances or lost any rights by reason of the annexation of the article in question."

■ Appellants further contend that while a purchaser is required to make inquiry of a person in possession as to his rights in the premises, and that he is ordinarily charged with such knowledge as such inquiry would have produced, such inquiry need only relate to the title and possession of the premises and does not include inquiry as to the right to remove improvements, such as floors, wall and ceilings. We cannot agree with this contention. If the rule was as contended for by appellants a tenant whose lease was not properly recorded would have no protection of his right to remove improvements. The landlord could suddenly sell the premises to a purchaser who could refuse to make any inquiry, and thereby destroy the tenant's otherwise perfect legal right to remove improvements which he had placed upon the premises under a binding contract with his landlord, to the effect that he could remove such improvements.

Appellee was entitled to recover the value of his improvements which were converted by appellants when they prevented him from removing them from the premises. Shelton v. Piner, Tex.Civ.App., 126 S.W. 65.

Appellants' other points become immaterial in view of the above holding.

The judgment is affirmed.