**Gilberto SANCHEZ, Appellant,**

v.

**Raymond TELLES d/b/a Raymond Telles Bail Bonds, Appellee.**

No. 08–96–00241–CV.

Court of Appeals of Texas, El Paso.

Aug. 15, 1997.

Rehearing Overruled Sept. 11, 1997.

Alejandro Soto, El Paso, for appellant.

James K. Read, El Paso, for appellee.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## *OPINION*

BARAJAS, Chief Justice.

This is an appeal from a summary judgment granted to Appellee, Raymond Telles, concerning the transfer of real property. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

### A. Factual History

On February 12, 1992, Manuela Montoya Yanez, pledged a parcel of real property to Appellee as collateral for two bail bonds on Francisco Javier Hirales, in the sum of $30,-000. Montoya is the mother-in-law of Hirales. On the same date that the real property was pledged, Montoya signed a deed of trust as principal guaranteeing her son-in-law's appearance in court to face criminal charges. The deed of trust was to secure a note to Appellee.

At the time Montoya executed the deed of trust and note, she was the record owner of the property. She did not claim the property

as her homestead, nor was there ever filed of record any designation of homestead concerning the property in question. The deed of trust signed by Montoya included the following provision:

> GRANTORS EXPRESSLY REPRESENT THAT THE PROPERTY HEREINABOVE MENTIONED AND CONVEYED TO THE TRUSTEE FORMS NO PART OF ANY PROPERTY, OWNED, USED OR CLAIMED BY GRANTORS AS EXEMPTED FROM FORCED SALE UNDER THE LAWS OF THE STATE OF TEXAS, AND GRANTORS RENOUNCE ALL AND EVERY CLAIM THERETO UNDER ANY SUCH LAW OR LAWS. THIS IS NOT MY HOMESTEAD.

Hirales failed to appear in Court to face his criminal charges, defaulted on his bonds, resulting in bonds being forfeited.

Subsequent to the bond forfeiture, Montoya signed a power of attorney naming her daughter, Sandra Luz Antillion Hirales, the wife of F. Hirales. The power of attorney was filed of record. Sandra Hirales then sold the property to Appellant on April 25, 1992. While the deed recites that the grantor is Manuela Montoya Yanez, the signature of Montoya does not appear anywhere on the deed. The signature of Sandra Hirales, attorney of fact for Montoya, does not appear on the deed either. The only signature appearing on the transfer instrument is that of Appellant. Appellant's signature appears on the space provided for the signature of the grantor. In fact, Appellant testified under oath at deposition that it was his signature on the purported deed dated April 25, 1992. The transfer instrument does not contain the signatures of any witnesses. This instrument also contains a notary's signature that is illegible and does not have the person's name who took the acknowledgment printed on the instrument. This purported deed was recorded May 7, 1992. Appellee's deed of trust was recorded on May 21, 1992.

On October 5, 1993, subsequent to default on the note, Appellee purchased the subject property for the sum of $36,000. The trustee's deed was recorded on October 7, 1993. The trustee then executed a "correction deed" on November 9, 1993 which corrected the name of the grantee at the trustee's sale from "Raymond Telles Bail Bonds" to "Raymond Telles, d/b/a Raymond Telles Bail Bonds."

On December 10, 1994, Sandra Hirales, as attorney-in-fact for Montoya, executed a correction warranty deed to Appellant for the property. It was recorded on December 15, 1994. The correction was that by error or mistake the signature of the grantee was affixed in place of that of the grantor, and that the correction deed is made by the grantor and accepted by the grantee in order to correct the mistake. This was done subsequent to the recordation of the deed of trust from Montoya to Appellee, the purchase at the trustee's sale and the trustee's correction deed, and after the litigation had already begun.

Appellee alleges that Sandra Hirales, the attorney in fact for Manuela Montoya Yanez, had actual notice of the pre-existing deed of trust to Appellee, because she not only executed a real estate lien note on the same date as the deed of trust, February 12, 1992, but she was the spouse of F. Hirales the person for whom the bail bond was issued and for whom the subject property was pledged.

## B. Procedural History

In the proceedings below, Appellee sought to set aside the purported conveyance of the subject property to the Appellant and to gain possession of the subject property. Appellant Sanchez affirmatively defended as a bona fide purchaser without notice. Sanchez also cross-claimed in a suit to quiet title, repeating the issue of bona fide purchaser and claiming that at the time Appellee acquired his deed of trust, the property was the homestead of the grantor, Montoya, and as a result, alleged that the deed of trust was invalid and void.

Appellee filed two motions for summary judgment, which were both answered by Appellant, and Appellant filed his own motion for summary judgment in favor of his cross-claim based on the issue of homestead. The trial court granted Appellee's second motion for summary judgment finding that the evi-

dence raised by Telles' second motion for summary judgment and uncontroverted by Appellant's response was clear, positive and direct, and otherwise credible and free from contradiction and inconsistencies, and could have been readily controverted. The court also found that there was no genuine issue of fact and that Appellee is entitled to judgment on his claim as a matter of law. The court also found that Appellant had no title to the property and that any deed showing he is the owner of the property is null and void. Finally, the court denied Appellant's motion for summary judgment and assessed all costs of court against Appellant.

Appellant then filed a motion for new trial following the summary judgment which was denied. Appellant now brings this appeal.

## II. DISCUSSION

Appellant brings three points of error alleging the trial court erred in granting the summary judgment. We begin with the standard of review for summary judgments.

### A. Standard of Review

The standard of review on appeal is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that a judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Cortez v. Liberty Mut. Fire Ins. Co.*, 885 S.W.2d 466, 469 (Tex.App.—El Paso 1994, writ denied). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. General Motors*, 450 S.W.2d 827, 828 (Tex.1970).

In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Nixon*, 690 S.W.2d at 548–

49; *DeLuna v. Guynes Printing Co.*, 884 S.W.2d 206, 208 (Tex.App.—El Paso 1994, writ denied). Where the defendants are the movants and they submit summary judgment evidence disproving at least one essential element of each of plaintiff's causes of action, then summary judgment should be granted. *Perez*, 819 S.W.2d at 471; *Bradley v. Quality Serv. Tank Lines*, 659 S.W.2d 33, 34 (Tex. 1983); *Cortez v. Liberty Mut. Fire Ins. Co.*, 885 S.W.2d at 469.

### B. Appellant's Points of Error

Appellant's Point of Error No. One avers that the trial court erred in granting summary judgment to Raymond Telles because Gilberto Sanchez was a bona fide purchaser without notice. We disagree.

■ Section 5.021, entitled Instrument of Conveyance, states, "A conveyance of an estate of inheritance, a freehold, or an estate for more than one year, in land and tenements, must be in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing." TEX. PROP.CODE ANN. § 5.021 (Vernon 1984). The Court in *Williams v. Jennings*, found, "The Texas Property Code requires that a conveyance of land must be in writing and must be subscribed and delivered by the conveyor. . . . Without such formalities, deeds could be changed at will without the knowledge of some parties." 755 S.W.2d 874, 879–80 (Tex.App.—Houston [14th Dist.] 1988). The Texas Property Code also provides for the recording of real property transfers and limits the validity of unrecorded instruments as follows:

A conveyance of real property or an interest in real property or a mortgage or deed of trust **is void** as to a creditor or to a subsequent purchaser for a valuable consideration without notice **unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.**

TEX.PROP.CODE ANN. § 13.001(a) (Vernon 1984 and Supp.1997); *Prowse v. Walters*, 941 S.W.2d 223, 227–28 (Tex.App.—Corpus Christi 1996, n.w.h.). This statute, through various transmutations in enumeration, has

been a part of our jurisprudence since before Texas was a state. *Gibralter Sav. Ass'n v. Martin,* 784 S.W.2d 555, 557 (Tex.App.—Amarillo 1990, writ denied). All of the transmutations of the statute are so similar in all material respects to the present one as to make decisions under those predecessors relevant. *Martin,* 784 S.W.2d at 557.

Texas law has long favored the purpose of recording acts, which make land title information available to interested persons. *City of Richland Hills v. Bertelsen,* 724 S.W.2d 428, 429–30 (Tex.App.—Fort Worth 1987, no writ), *citing Leonard v. Benford Lumber Co.,* 110 Tex. 83, 216 S.W. 382, 383 (1919); *Hancock v. Tram Lumber Co.,* 65 Tex. 225, 232 (1885). In *Anderson v. Barnwell,* 52 S.W.2d 96, 101 (Tex.Civ.App.—Texarkana 1932), *aff'd,* 126 Tex. 182, 86 S.W.2d 41 (1935), the court stated:

> The intention of the recording acts is to compel every person receiving conveyances of real property to place such an instrument of record, not only that he may thereby protect his own rights, but also those of all others who may afterwards seek to acquire an interest in the same property.

*Anderson,* 52 S.W.2d at 101. To be effectively recorded, an instrument relating to real property must be recorded in the public records in the county in which a part of the property is located. *Bertelsen,* 724 S.W.2d at 429–430, *citing* TEX.PROP.CODE ANN. § 11.001(a)(Vernon 1984). The recording laws in Texas were meant to protect innocent purchasers and creditors without notice of the prior transfer from being injured or prejudiced by their lack of knowledge of the competing claim. *Walters,* 941 S.W.2d at 227–28.

Section 12.001, entitled Instruments Concerning Property, provides:

> An instrument conveying real property may not be recorded **unless it is signed and acknowledged or sworn to by the grantor in the presence of two or more credible subscribing witnesses or acknowledged or sworn to before and certified by an officer authorized to take acknowledgments or oaths, as applicable.**

TEX. PROP.CODE ANN. § 12.001 (b)(Vernon 1984 and Supp.1997). As stated by the court in *Boswell v. Farm & Home Savings Ass'n,* " An instrument that is properly recorded in the proper county is notice to all persons of the existence of the instrument. TEX.PROP.CODE ANN. § 13.002 (Vernon 1987). However, an instrument conveying real property is not even eligible for recording unless it is signed and acknowledged by the grantor in the presence of two or more subscribing witnesses or a notary. TEX.PROP. CODE ANN. § 12.001(b)(Vernon Supp.1994)." 894 S.W.2d 761, 766–67 (Tex.App.—Fort Worth 1994, writ denied). The general purpose of an acknowledgment is to authenticate an instrument as being the act of the person executing the instrument. *Onwuteaka v. Cohen,* 846 S.W.2d 889, 895 (Tex.App.—Houston [1st Dist.] 1993, writ denied), *citing Punchard v. Masterson,* 100 Tex. 479, 101 S.W. 204, 205 (1907); *Shelton v. Swift Motors, Inc.,* 674 S.W.2d 337, 342 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). In order to be recorded in the real property records, an acknowledgment is necessary. *Cohen,* 846 S.W.2d at 895, *citing* TEX. PROP.CODE ANN. § 12.001 (Vernon Supp.1997). A contract for the sale and purchase of real estate which is not acknowledged by the grantor is not notice to subsequent purchasers, though it be acknowledged by the purchaser and recorded. *Sweeney v. Vasquez,* 229 S.W.2d 96, 97 (Tex.Civ.App.—San Antonio 1950, writ ref'd); *Grossman v. Jones,* 157 S.W.2d 448 (Tex.Civ.App.—San Antonio 1941, writ ref'd w.o.m.).

Using the law described above, we now turn to the evidence as presented by the record. Appellee received a deed of trust on February 12, 1992. No other deed was recorded. Appellant purchased the property on April 25, 1992. The purported deed of conveyance contained an error in that it was signed by the grantee, Appellant, and not by the grantor, Montoya or her attorney-in-fact, S. Hirales. In fact, nowhere on the face of the deed does it contain the signature of the true owner, Montoya. Appellant, as the purchaser, signed as the grantor, and in essence conveyed the property to himself. This "deed" was also never

witnessed. Appellant attempted to correct this "purported" deed by filing a correction deed, nearly two and one-half years later on December 10, 1994, stating that an error has been committed in that the signature of the grantee, Appellant, was affixed in place of that of the grantor, Montoya. By the time of the filing of the correction deed, no less than three previously recorded instruments concerning the subject property were properly recorded: Deed of trust to Appellee recorded on May 21, 1992; the trustee's deed to Appellee recorded on October 7, 1993; and the trustee's deed to Appellee recorded on November 9, 1993. Ordinarily, a correction deed relates back to the date of the agreement, which it purports to express more accurately. *Buccaneer's Cove, Inc. v. Mainland Bank*, 831 S.W.2d 582, 584 (Tex.App.—Corpus Christi 1992, no writ), *citing Borden v. Hall*, 255 S.W.2d 920, 925 (Tex.Civ.App.—Beaumont 1951, writ ref'd n.r.e.). A correction deed is executed and recorded for the unique purpose of correcting a scrivener's error in the description of the property. *Joe T. Garcia's Enterprises, Inc. v. Snadon*, 751 S.W.2d 914, 916 (Tex.App.—Dallas 1988, writ denied); *see, e.g., Wilson v. Dearing, Inc.*, 415 S.W.2d 475, 476 (Tex.Civ.App.—Eastland 1967, no writ)(correction deed corrected erroneous description of land in a former instrument); *Parker v. McKinnon*, 353 S.W.2d 954, 955 (Tex.Civ.App.—Amarillo 1962, writ ref'd n.r.e.)(correction deed executed to correct errors in former deed omitting state and county descriptions, misspelling survey description and providing corrected volume number of original patent); *Fenn v. Boxwell*, 312 S.W.2d 536, 541 (Tex.Civ.App.—Amarillo 1958, writ ref'd n.r.e.)(correction deed executed to reflect grantor's conveyance of a lot in Block 122 instead of Block 102 where he owned no property). Our research has not disclosed, and neither party has presented, a prior case where the grantor has executed a correction deed to supply a missing essential signature, as that required by the grantor in order to effectively transfer the title to property.

As expressed in Section 5.021, a deed normally contains the signature of the grantor and is acknowledged. In the present case, the "purported" deed did not contain the required signatures and pursuant to the Property Code, should never have been recorded. Furthermore, the failure of Montoya or her attorney-in-fact to sign the deed created a void deed ab initio. A deed which is void cannot pass title even to an innocent purchaser from the grantee. *Lighthouse Church of Cloverleaf v. Texas Bank*, 889 S.W.2d 595, 601–02 (Tex.App.—Houston [14th Dist.] 1994, writ denied), *citing Daniels v. Mason*, 90 Tex. 240, 38 S.W. 161, 162 (1896); *Bellaire Kirkpatrick Joint Venture v. Loots*, 826 S.W.2d 205, 209 (Tex.App.—Fort Worth 1992, writ denied). Accordingly, Appellant's Point of Error No. One is overruled.

Appellant's Point of Error No. Two avers that the trial court erred in granting summary judgment to Appellee because there were genuine issues of material fact concerning the homestead nature of the property that would preclude the judgment. Point of Error No. Three claims the trial court erred in dismissing Appellant's summary judgment because the homestead nature of the property rendered the claimed interest of Appellee null and void. We disagree with both points of error.

■■■■ The Texas Constitution addresses the issue of homesteads and provides the following protection:

The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, an owelty of partition imposed against the entirety of the property by a court order or by a written agreement of the parties to the partition, including a debt of one spouse in favor of the other spouse resulting from a division or an award of a family homestead in a divorce proceeding, the refinance of a lien against a homestead, including a federal tax lien resulting from the tax debt of both spouses, if the homestead is a family homestead, or from the tax debt of the owner, or for work and material used in constructing improvements thereon.... No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for a

debt described by this section, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void. **A purchaser or lender for value without actual knowledge may conclusively rely on an affidavit that designates other property as the homestead of the affiant and that states that the property to be conveyed or encumbered is not the homestead of the affiant.**

TEX. CONST. art. XVI, § 50 (emphasis added). The homestead interest is a legal interest created by the constitution that provides prophylactic protection from all but the three types of constitutionally permitted liens against homesteads. *Heggen v. Pemelton,* 836 S.W.2d 145, 148 (Tex.1992). This interest, unlike the right of reimbursement, gives protective legal security rather than vested economic rights. *Id.* In Texas, the homestead right constitutes an estate in land. *Laster v. First Huntsville Properties Co.,* 826 S.W.2d 125, 129 (Tex.1991), *citing Woods v. Alvarado State Bank,* 118 Tex. 586, 593–94, 19 S.W.2d 35, 37–38 (1929). This estate is analogous to a life tenancy, with the holder of the homestead right possessing the rights similar to those of a life tenant for so long as the property retains its homestead character. *Laster,* 826 S.W.2d at 129, *citing Fiew v. Qualtrough,* 624 S.W.2d 335, 337 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); *Sparks v. Robertson,* 203 S.W.2d 622, 623 (Tex.Civ.App.—Austin 1947, writ ref'd). Although the homestead estate is not identical to a life estate because one's homestead rights can be lost through abandonment, "it may be said that the homestead laws have the effect of reducing the underlying ownership rights in a homestead property to something akin to remainder interests and vesting in each spouse an interest akin to an undivid-

ed life estate in the property." *Laster,* 826 S.W.2d at 129, *citing United States v. Rodgers,* 461 U.S. 677, 686, 103 S.Ct. 2132, 2138, 76 L.Ed.2d 236 (1983). The Texas Property Code also provides for the designation of a homestead:

(c) To designate property as a homestead, a person or persons, as applicable, must make the designation in an instrument that is signed and acknowledged or proved in the manner required for the recording of other instruments. The person or persons must file the designation with the county clerk of the county in which all or part of the property is located. The clerk shall record the designation in the county deed records. The designation must contain:

(1) a description sufficient to identify the property designated;

(2) a statement by the person or persons who executed the instrument that the property is designated as the homestead of the person's family or as the homestead of *a single adult person not otherwise entitled to a homestead;*

(3) the name of the current record title holder of the property; and

(4) for a rural homestead, the number of acres designated and, *if there is more than one survey, the number of acres in each.*

TEX.PROP.CODE ANN. § 41.005(c)(Vernon 1984 and Supp.1997). Homestead rights have their origin in constitutional and statutory provisions and not in the common law. *Gann v. Montgomery,* 210 S.W.2d 255, 257–58 (Tex.Civ.App.—Fort Worth 1948, writ ref'd n.r.e.), *citing* 40 C.J.S. *Homesteads* § 2 (1991). There are no exemptions except those provided by law. *Id.* The courts have always given a liberal construction to the Constitution and Statutes to protect the homestead rights. *Id.* It is clear however, that the courts cannot protect that which is not homestead. *Id. citing Whiteman v. Burkey,* 115 Tex. 400, 282 S.W. 788 (Tex.1926).[1]

---

1. The Court in *Montgomery* further added:

'The exemption is, in terms, of lots or acres of land; but the object was to secure the family a home. 'House' is necessarily embraced in the word 'homestead.' *Cullers v. James,* 66 Tex. 494, 1 S.W. 314, 315. 'A homestead is the dwelling house constituting the family resi-

dence, together with the land on which it is situated and the appurtenances connected therewith.' 40 C.J.S. *Homesteads* § 1 (1991). Referring to the meaning of the term homestead, it is said in Thompson on Real Property, Perm.Ed., vol. 2, § 967, 'In this sense it means that tract of land which being within the statu-

To establish homestead rights, the claimant must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead. *Gregory v. Sunbelt Sav., F.S.B.* 835 S.W.2d 155 (Tex.App.—Dallas 1992, writ denied). Van Brunt v. Banc-Texas Quorum, N.A., 804 S.W.2d 117, 122 (Tex.App.—Dallas 1989, no writ); *Lifemark Corp. v. Merritt,* 655 S.W.2d 310, 314 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Dodd v. Harper,* 670 S.W.2d 646 (Tex.App.—Houston [1st Dist.] 1983, no writ); *Braden Steel Corp. v. McClure* 603 S.W.2d 288 (Tex.Civ.App.—Amarillo 1980, no writ); *Sims v. Beeson,* 545 S.W.2d 262, 263 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.); *see also Prince v. North State Bank of Amarillo,* 484 S.W.2d 405, 409 (Tex.Civ. App.—Amarillo 1972, writ ref'd n.r.e.); *Blackwell v. Lasseter,* 203 S.W. 619 (Tex.Civ. App.—El Paso 1918), *aff'd,* 227 S.W. 944 (Tex.Com.App.1921, judgm't adopted). The party claiming the homestead exemption has the burden of establishing the homestead character of the property. *NCNB Texas Nat'l Bank v. Carpenter,* 849 S.W.2d 875, 879 (Tex.App.—Fort Worth 1993, no writ), *citing First Interstate Bank of Bedford v. Bland,* 810 S.W.2d 277, 286 (Tex.App.—Fort Worth 1991, no writ). A subsequent purchaser of homestead property, may assert the prior persons homestead protection against a prior lienholder so long as there is no gap between the time of homestead alienation and recordation of his title. *Lawrence v. Lawrence,* 911 S.W.2d 450, 452–53 (Tex.App.—Texarkana 1995, writ denied), *citing Intertex, Inc. v. Kneisley,* 837 S.W.2d 136, 138 (Tex.App.—Houston [14th Dist.] 1992, writ denied)(*citing Posey v. Commercial Nat'l Bank,* 55 S.W.2d 515, 517 (Tex.Com.App.1932, judgm't adopted)). No estoppel can arise in favor of a lender or encumbrancer who has attempted to secure a lien on homestead property that is in actual use and possession of the homestead claimant, based solely upon declarations, whether written or oral, which state to

the contrary. *NCNB Texas Nat'l Bank,* 849 S.W.2d at 880, *citing Lincoln v. Bennett,* 138 Tex. 56, 156 S.W.2d 504, 506 (1941); *First Interstate Bank,* 810 S.W.2d at 287. Moreover, when a homestead claimant is in actual occupancy of his homestead, it will be deemed that a lender or encumbrancer acted with knowledge of the occupant's right to invoke the rule of homestead. *Carpenter,* 849 S.W.2d at 880, *citing First Interstate Bank,* 810 S.W.2d at 285; *see also Englander Co. v. Kennedy,* 424 S.W.2d 305, 308–09 (Tex. Civ.App.—Dallas, *writ ref'd n.r.e. per curiam* ), 428 S.W.2d 806 (Tex.1968). Possession and use of land by one who owns it and who resides upon it makes it the homestead in law and in fact. *Carpenter,* 849 S.W.2d at 880, *citing First Interstate,* 810 S.W.2d at 286; *Lifemark Corp. v. Merritt,* 655 S.W.2d 310, 314 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). It must always be remembered that mere ownership alone is insufficient to constitute premises of a homestead. *Silvers v. Welch,* 127 Tex. 58, 91 S.W.2d 686, 688 (1936); that merely residing in a house over a length of time alone does not convert it into a homestead, *Hilliard v. Home Builders Supply Co.,* 399 S.W.2d 198, 201 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.); that occupancy of property does not ipso facto make the property a homestead. *Purdin v. Jenkins,* 337 S.W.2d 418, 421 (Tex.Civ.App.—Dallas 1960, no writ), *citing Roberson v. Home Owners' Loan Corp.,* 147 S.W.2d 949 (Tex.Civ.App.—Dallas 1941, writ dism'd judgm't cor.); and that the word "home" is not necessarily synonymous with "homestead." *West v. Austin Nat'l Bank,* 427 S.W.2d 906, 912 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.). The *West* court also added:

A person may refer to his place of abode as 'home' even though he merely rents the premises and is not entitled to claim a homestead. Further, as our Supreme Court has said, 'The acquiring of a new home is not always the acquiring of a new

---

tory limitations both as to quantity and value is held, occupied, and claimed as a homestead, and includes as an indispensable part thereof the dwelling-house or family residence.' In 40 C.J.S., *Homesteads,* § 52 (1991), it is said: 'The right of homestead is generally regarded as

incidental to an interest in land, rather than to buildings considered apart from the soil; but it attaches to the structure erected on exempt premises and to fixtures permanently annexed to the realty.' *Id.* at 257–58.

homestead, and one does not necessarily abandon a homestead by merely moving his home.' *Rancho Oil Co. v. Powell,* 142 Tex. 63, 175 S.W.2d 960, 963 (1943). It is the acquisition of a new homestead, not merely the acquisition of a new home, which operates as an abandonment of homestead rights.

 *West,* 427 S.W.2d at 912. It must also be noted that a court may not assume facts to support a claim of homestead against the validity of an existing debt or lien. *Hilliard,* 399 S.W.2d at 200, *citing Balcomb v. Vasquez,* 241 S.W.2d 650 (Tex.Civ.App.—El Paso 1951, writ ref'd n.r.e.). Taking the above statutory and case law, we now examine the evidence presented in the record.

 The trial court held oral arguments for Appellee's Second Motion for Summary Judgment. Appellant proffered the affidavit of Raul Huereca, the neighbor of both Appellant and the seller of the property, Montoya. The affidavit states that Montoya and her daughter resided at the property for eight years, and that Appellant has resided there for the past three and one-half years. The trial court invited Appellant to submit evidence from the previous owner of the property, Montoya. Appellant produced a foreign affidavit, in support of his motion for new trial following summary judgment which states:

> Through the means of this present affidavit, I certify swearing to tell the truth, that since the month of November of 1990 until the month of April of 1992, I was residing at the house marked with the number 10813 of Porsel Drive in Socorro, Texas, United States of North America.[2]

Neither this affidavit, nor the one of neighbor Raul Huereca, contradicts Montoya prior sworn and unequivocal statement in the deed of trust given to Appellee stating, "This is not my Homestead." This affidavit merely testifies that she resided at the property. As stated above, mere residency or occupancy alone does not make a property a homestead.

Also, as provided by Texas Constitution, a purchaser or lender for value without actual knowledge may conclusively rely on an affidavit that states that the property to be conveyed or encumbered is not the homestead of the affiant. TEX. CONST. art. XVI, § 50. In order for a party to establish homestead rights, they must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead. The clearest example of Montoya's intent is the previously sworn homestead disclaimer in the deed of trust. Further examples of Montoya's intent not to claim the property as homestead was the fact that she never filed of record a Designation of Homestead, which is provided for under Section 41.005 of the Texas Property Code, which would have been prima facie evidence of her intent to claim the property as her homestead and provide notice to all lenders that she intends to claim the property as homestead. Her intent not to claim the property as homestead is furthered by the fact that she never claimed the property as her homestead with the El Paso Central Appraisal District nor did her subsequent purported deed to Appellant, or the correction deed, ever refer to the property as a homestead. The only clear evidence of Montoya's intent is the sworn statement in the deed of trust stating, "This is not my homestead." We find that the trial court did not err in granting Appellee's summary judgment and denying Appellant's in that there are no genuine issues of material fact regarding the homestead nature of the property that would have precluded summary judgment. Accordingly, Appellant's Points of Error Nos. Two and Three are overruled.

Having overruled all of Appellant's points of error, we affirm the judgment of the trial court.[3]

---

2. The Court notes the discrepancy in the length of time which Montoya resided on the property. Raul Huereca states that Montoya resided at the property for eight years, while Montoya herself states the length of time as being two years.

3. On August 15, 1997, this Court granted Appellee's motion for substitution of party to Mark T. Davis. The Appellee in the style of this case is Mark T. Davis.