# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40321

United States Court of Appeals
Fifth Circuit

**FILED**
September 30, 2015

Lyle W. Cayce
Clerk

In the Matter of: Stanley Thaw

Debtor

-------------------------------------------------------

CHRISTOPHER MOSER; KERNELL THAW,

Appellants,

v.

MD LESLIE SCHACHAR,

Appellee.

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 4:14-CV-185

Before REAVLEY, ELROD and HAYNES, Circuit Judges.

PER CURIAM:*

Christopher Moser, bankruptcy trustee for Stanley Thaw, and Kernell Thaw, Stanley's spouse, both appeal two decisions of the district court ruling that § 52.042 of the Texas Property Code did not cancel and release the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40321

judgment lien that Leslie Schachar held on Thaw's property and that the Thaws had not established a homestead exemption in their Brandywine property. Because the district court correctly interpreted § 52.042 as governing the enforcement of an abstract of judgment after the conclusion of a bankruptcy proceeding and because the appellants did not demonstrate the requisite intent to transfer their homestead to the Brandywine property, we AFFIRM.

## I.

Stanley and Kernell Thaw were married in 2001. In 2002, Stanley went into business with Leslie Schachar. The business founded by the two, Thermamedics, was unsuccessful and fell into debt in 2004 and 2006. On both occasions, Schachar paid the obligations. Schachar sued in state court to collect Stanley's share of the payments. Schachar obtained a judgment on November 5, 2009 for $349,535.82 plus attorneys' fees of $12,500 with an annual interest charge of 5% added in addition. On November 11, 2009, Schachar recorded an abstract of judgment in the land records for Collin County, Texas. The Texas Court of Appeals confirmed Schachar's judgment on July 26, 2011. *Thaw v. Schachar*, No. 07-10-0027-cv, 2011 WL 3112064 (Tex. App—Amarillo July 26, 2011, no pet.) (mem. op.).

On October 28, 2009, the Thaws entered into a contract for deed on a property at 5197 Brandywine Lane, Frisco, Texas 75034 from Axxium Custom Homes of Dallas. On November 1, 2009, the Thaws and Axxium executed a new contract increasing the sale price from $1,750,000 to $2,150,000. The contract was not recorded. The Thaws moved into the Brandywine property in early January 2010. According to Kernell Thaw, they did not enter the Brandywine property earlier than January 2010 in order to complete renovations. Prior to that time, they lived in a property located at 2532 Pelican Bay Drive in Plano, Texas. The Thaws had designated the Pelican Bay

2

property as their homestead in a voluntary filing with the Collin County Clerk's office in 2004.

In 2009 and 2010, the Thaws received a homestead tax credit for their Pelican Bay home (they purchased the Brandywine property in November 2009). On November 12, 2010, the Thaws submitted a mortgage application to Southwest Bank for the purchase of a home at 6122 Linden Lane, Dallas, Texas. The loan application indicated that the Linden Lane property would be the Thaws' primary residence and listed their present address as the Pelican Bay property. They did not disclose any interest in the Brandywine property.

In June 2011, the day after the Texas Court of Appeals affirmed Schachar's judgment against Stanley Thaw, Axxium conveyed title to the Brandywine property to the Thaws through a special warranty deed which was recorded in the Collin Count records. The transaction valued the property at $2,150,000—$400,000 more than it had been assessed for in May 2011—and was covered through a $1,000,000 mortgage with a third party lender and a credit of $1,133,195.70 applied to the Thaws by Axxium. The bankruptcy court determined that the high credit resulted from the Thaws having significantly overpaid Axxium on their contract for deed. The Thaws made those overpayments using funds diverted from a group of businesses ostensibly owned by Kernell Thaw and managed by Stanley Thaw. The Thaws designated the Brandywine property as their homestead in a voluntary filing in July 2011.

Stanley Thaw filed a voluntary chapter 7 bankruptcy petition in December 2011. Schachar filed a proof of claim in the bankruptcy case asserting a secured interest of $400,566.17 (the amount of the judgment lien and applicable interest outstanding at the time Stanley Thaw filed for bankruptcy) in the Brandywine property. The bankruptcy court entered an order declaring Schachar a secured creditor. It is from this order that the Trustee and Kernell Thaw appealed to the district court, and now to this court.

No. 15-40321

The bankruptcy court also determined that the Brandywine property was not exempt from creditors as the Thaws' homestead because they had not satisfied Texas's requirement for establishing a homestead. The court also disallowed the attempt to establish a homestead because it determined Stanley Thaw had "concocted an elaborate scheme to funnel non-exempt assets into his exempt homestead in a way that would be difficult for creditors such as Schachar to detect or trace." *In re Thaw*, 496 B.R. at 851. The bankruptcy court further concluded that Kernell Thaw had no separate exemption in the Brandywine property, a decision later upheld on appeal by the Fifth Circuit. *In re Thaw*, 769 F.3d at 372.

Christopher Moser, the bankruptcy trustee for Stanley Thaw's bankruptcy estate, sold the Brandywine property in August 2013. The net proceeds from the sale are being held by the trustee pending resolution of the current proceedings.

Moser and the Thaws appealed the decision of the bankruptcy court denying the homestead exemption and acknowledging Schachar's secured interest in the Brandywine property. The district court, reviewing the issues *de novo*, agreed with the bankruptcy court on both arguments. *Moser v. Schachar*, 2015 WL 679689. At the district court, Moser also argued that Schachar's abstract of judgment was defective because it did not list Stanley Thaw's date of birth or the last three digits of his license identification number. *Id*. at *2. The district court, reviewing the bankruptcy court's factual determination of sufficiency for clear error, determined that Schachar's abstract was not defective. *Id*. at *8. Moser does not appeal this ruling.

## II.

This court reviews the decisions of the district court using the same standards applied by the district court in its appellate review of bankruptcy court decisions. *In Re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003). The Fifth

4

No. 15-40321

Circuit reviews findings of fact for clear error and conclusions of law *de novo*. *In re Williams*, 337 F.3d 504, 408 (5th Cir. 2003). Mixed questions of law and fact are reviewed *de novo* although the underlying factual findings should be reviewed for clear error. *In re Green Hills Development Co.*, 741 F.3d 651 (5th Cir. 2014).

## A.

Moser argues that the bankruptcy and district courts erred by recognizing Schachar as a secured creditor in the bankruptcy proceeding with a secured interest in the Brandywine property. Moser contends that Texas law canceled Schachar's lien when the personal debt of Stanley Thaw was discharged during the bankruptcy. This is question of law and is reviewed *de novo*. *In re Williams*, 337 F.3d at 408.

Texas law provides that:

(a) A judgment is discharged and any abstract of judgment or judgment lien is canceled and released without further action in any court and may not be enforced if: (1) the lien is against real property owned by the debtor before a petition for relief was filed under federal bankruptcy law; and (2) the debt or obligation evidenced by the judgment is discharged in the bankruptcy.

Tex. Prop. Code § 52.042 (West). The following section adds that:

A judgment lien is not affected by this subchapter and may be enforced if the lien is against real property owned by the debtor before a petition for debtor relief was filed under federal bankruptcy law and: (1) the debt or obligation evidenced by the judgment is not discharged in bankruptcy; or (2) the property is not exempted in the bankruptcy and is abandoned during the bankruptcy.

Tex. Prop. Code § 52.043 (West.) Moser argues that the effect of § 52.042 is to reach into the bankruptcy proceeding and transform Schachar's secured debt into an unsecured debt. Schachar responds that its effect is to terminate liens

5

No. 15-40321

after the bankruptcy process is concluded because those liens would otherwise survive the bankruptcy, citing *Long v. Bullard*, 117 U.S. 617 (1886), and argues that Moser has no support for his contention that § 52.042 alters Schachar's rights in the bankruptcy.

Discharge of a debt in bankruptcy is "the release of a debtor from all of his debts which are provable in bankruptcy … [it] is the step which regularly follows the filing of a petition in bankruptcy and the administration of his estate. By it the debtor is released from the obligation of all his debts … so that they are no longer a charge upon him." Black's Law Dictionary 463 (6th ed. 1991). Discharge does not extinguish the debt, rather it removes any *in personam* remedy that the creditor had against the debtor prior to the bankruptcy while leaving in place the remedies the debtor has against the property *in rem*. *See Long v. Bullard*, 117 U.S. at 621; 11 U.S.C. § 524(a)(1) ("a discharge … voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor"); *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."); *Stanley v. Trinchard*, 500 F.3d 411, 419–20 (5th Cir. 2007) ("[A] bankruptcy discharge eliminates only the debtor's personal liability and *not* the debt itself.").

What then, is the effect of § 52.042? Moser suggests that it eradicates the *in rem* remedy during the bankruptcy and leaves Schachar as an unsecured creditor when the trustee is responsible for distributing the assets of the bankruptcy estate to the creditors. This reading is unpersuasive. With no indication from any Texas court that § 52.042 achieves such a sweeping effect, we are loath to read this into Texas's law.

6

No. 15-40321

Rather, we are persuaded that § 52.042 acts on the status of any liens against the land or assets held by the debtor after the bankruptcy process has come to a close. The statute reads that a lien is discharged "without further action in any court" after the debt is discharged in bankruptcy. Tex. Prop. Code § 52.042(a). This language is a reference to the process that existed before § 52.042's enactment. Texas law allowed that "a judgment and judgment lien may be discharged and canceled if the person against whom the judgment was rendered is discharged from his debts under federal bankruptcy law," Tex. Prop. Code § 52.021 (West), but required the debtor to "apply, on proof of the discharge, to the court in which the judgment was rendered for an order discharging and canceling the judgment and judgment lien," Tex. Prop. Code § 52.022(a). The debtor could not make his application "before a year has elapsed since the bankruptcy discharge." Tex. Prop. Code § 52.022(b).

Read in that context, it is apparent that § 52.042 does not affect the lienholder's status during the bankruptcy but rather only after the bankruptcy. The new provision merely removes the one-year waiting period and eliminates the requirement that the debtor return to state court for a court order voiding the lien. Section 52.042 continues to tack onto the conclusion of the federal bankruptcy process, as § 52.021 does.

Section 52.042 ought also to be read in parallel with § 52.043, with which it was enacted. Section 52.043 creates an exception for abandoned or exempt property from the effects of § 52.042. Section 52.043 is nonsensical if read to apply within the bankruptcy, as Moser would have the court read its companion, § 52.042. Because the two sections work in concert (the first creating the rule, the second outline exceptions from that rule), it is logical to read them together and give effect to both after the bankruptcy process is concluded. Therefore, § 52.042 does not affect the relationship between Schachar and Moser in the bankruptcy proceeding. It merely alters the process

7

that Moser or Stanley Thaw must pursue to eliminate the possibility of an *in rem* proceeding "*after* the bankruptcy proceeding." *Moser v. Schachar*, 2015 WL 679689 at \*6.

This is the reading adopted by the bankruptcy and district courts. It is also the reading adopted by other courts addressing the same question. In *Chae v. Schneider*, 244 S.W.3d 425 (Tex. App.—Eastland 2007), the Eastland Court of Appeals read § 52.042 to prohibit enforcement of a judgment because the debtor entered bankruptcy during the litigation proceedings and the creditor did not seek restitution through the bankruptcy proceeding. The court noted (but did not rest its holding on the conclusion) that § 52.042 entitled the debtor to discharge since the proceeding in which it arose, unlike the current appeal, was distinct from the bankruptcy proceeding and the judgment would be rendered after the bankruptcy proceeding had concluded. Similarly, the Dallas Court of Appeals explained that §§ 52.042–3 "address the automatic cancellation and release of judgment liens and abstracts of judgment when the subject property was part of the bankruptcy estate" and enforcement is sought in a separate, subsequent proceeding. *Deco–Dence, L.L.C. v. Robertson*, 2011 WL 2937439 (Tex. App.—Dallas 2011). In *Studensky v. Buttery Company* (*In re Argubright*), the Bankruptcy Court for the Western District of Texas was confronted with a situation analogous to our own: Whether a creditor holding an abstract of judgment was still secured in the bankruptcy proceeding after the debtor filed for bankruptcy. 532 B.R. 888 (Bankr. W.D. Tx 2015). The court concluded that §§ 52.042–3 "do not alter the rights of a judgment lienholder in a bankruptcy case." *Studensky*, 532 B.R. at 893.[1]

---

[1] The court went on to discuss whether the reading of § 52.042 suggested here by Moser would be pre-empted by federal bankruptcy law, ultimately concluding that it would. *Studensky*, 532 B.R. at 895. Schachar also raises this argument in his reply. Because § 52.042 does not invalidate Schachar's claim, it is not necessary to speculate as to whether such a construction would be pre-empted by federal law.

No. 15-40321

## B.

In a bankruptcy filing, a debtor may use the federal homestead exemption or elect to use the homestead exemption of his state of domicile. 11 U.S.C. § 522(b). Stanley Thaw elected to have his homestead exemption determined by state law. If the Brandywine property is exempt, as Moser and Kernell Thaw claim, it will be protected from Schachar's judgment lien. Tex. Prop. Code § 41.001(a) ("a homestead … [is] exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property.")[2]

Under Texas law, "to establish homestead rights, the claimant must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead." *Sanchez v. Telles*, 960 S.W.2d 762, 770 (Tex. App.—El Paso 1997, pet. denied). "The party claiming the homestead exemption has the burden of establishing the homestead character of the property." *NCNB Tex. Nat'l Bank v. Carpenter*, 849 S.W.2d 875. 879 (Tex. App.—Fort Worth 1993, no writ). "A claimant may only have one homestead at any given time," even if the claimant owns multiple residences. *In re Cate*, 170 B.R. 582, 584 (Bankr. N.D. Tex. 1994); *Achilles v. Willis*, 16 S.W. 746 (Tex. 1891). A claimant cannot establish a homestead through mere ownership, *Sanchez*, 960 S.W.2d at 770, rather, a court must conduct a fact intensive inquiry focused on the owner's "concurrent usage and intent to claim the property as a homestead." *Florey v. Estate of McConnell*, 212 S.W.3d 439, 445 (Tex. App.—Austin 2006, pet. denied).

Once a claimant has established homestead rights in one residence, they are not easy to transfer. A homestead loses its character through "the claimant's death, abandonment, or alienation." *Duran v. Henderson*, 71 S.W.3d

---

[2] The code goes on to list purchase money mortgages, property tax liens, loans for improvements to the property and several other debts as "encumbrances properly fixed." Tex. Prop. Code § 41.001 (b). None apply to the present case.

833, 842 (Tex. App.—Texarkana 2002, pet. denied). A homestead is abandoned if the owner voluntarily leaves the residence "with a then present intent to occupy it no more as a home." *Pierce v. Wash. Mut. Bank*, 226 S.W.3d 771, 715 (Tex. App.—Tyler 2007, pet. denied). An owner may establish a homestead before he takes up occupancy "if the owner intends to occupy and use the premises within a reasonable and definite time in the future, and has made such preparations toward actual occupancy that 'are of such a character and have proceeded to such an extent as to manifest beyond a doubt the intention to complete the improvements and reside upon the place as a home.'" *Pierce*, 226 S.W.3d at 715 (quoting *Farrington v. First Nat'l Bank of Bellville*, 753 S.W.2d 248, 250 (Tex. App.—Houston [1st. Dist.] 1988, writ denied)).

Kernell Thaw argues that the district and bankruptcy courts erred, as a matter of law, by assuming Texas law prevented the Thaws from establishing a homestead at the Brandywine property before they took residence in it. She further contends that the bankruptcy and district courts failed to conduct the necessary fact specific inquiry to determine whether the Thaws had established the Brandywine property as a homestead before Schachar filed his judgement lien. Contrary to Kernell Thaw's assertions, neither the bankruptcy court nor the district court simply concluded that the Brandywine property was not a homestead because the Thaws had not inhabited it. The bankruptcy court explained that the Brandywine property was not a homestead before Schachar filed his lien because:

> The Thaws were still living in their Pelican Bay home at that time. They had not sold the Pelican Bay home. And they continued to hold title to the Pelican Bay home, even after moving into the Brandywine house. And they continued to assert that the Pelican Bay home was their homestead.

*Moser v. Schachar*, 2015 WL 679689 at *8. The district court determined that the bankruptcy court had conducted the necessary fact finding inquiry and further added that: "The Thaws did not record the contract for deed on the Brandywine Property; they claimed a tax homestead exemption on the Pelican Bay Property in 2010; and they represented to another bank on November 12, 2010, that their present address was the Pelican Bay Property." *Id.* at *10.

To bolster her argument that the Brandywine property became the Thaws' homestead on November 1, 2009, Kernell Thaw relies on *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796 (Tex. App.—Austin 2004), in which the Texas Court of Appeals recognized a newly purchased home became a family's homestead while it was undergoing renovations prior to the family taking occupancy. In *Kendall Builders*, however, the Chesson family intended to and actually did vacate their previous residence in California, transferring checking accounts, changing their voter registration, and obtaining new drivers licenses. *Id.* at 809. The Thaws, by contrast, retained their ownership in the Pelican Bay property, which they had previously established as their homestead. They continued to claim the Pelican Bay property as their homestead for property tax purposes for both 2009 and 2010 and listed the Pelican Bay property as their address on a loan application completed in November 2010 (a year after Kernell claims they made the Brandywine property their homestead). In *Kendall Builders*, the Texas Court of Appeals stressed that merely acquiring a new residence or moving out of a previous residence is not sufficient to abandon a homestead. 149 S.W.3d at 808. Rather, "'in order to constitute an abandonment … it must also be shown that … discontinuance [of use of the property as a residence] was accompanied by an intention never to resume its use as a homestead.'" *Id.* (quoting *Robinson v. McGuire*, 203 S.W. 415, 417 (Tex. App.—Austin 1918, no writ)).

No. 15-40321

The other cases to which Kernell Thaw points are no more helpful to her argument. In *Caulley v. Caulley*, the Supreme Court of Texas concluded a divorced man had not established a homestead in a farm acquired with his second wife because, although they intended to make it their home in the future, they continued to occupy their current homestead. 806 S.W.2d 795, 797 (Tex. 1991). Similarly, in *In re Hunt*, the bankruptcy court concluded that the claimants had not established a new homestead between closing on and occupying a new home because "good faith intention to occupy the premises as a homestead alone is not enough to create a homestead" absent overt acts to abandon the previously established homestead. 61 B.R. 224, 228 (Bankr. S.D. Tx. (Houston) 1986) (quoting *Clark v. Salinas*, 626 S.W.2d 118, 120 (Tex. App.—Corpus Christi, writ re'f n.r.e.)).

The bankruptcy and district courts correctly applied Texas's homestead exemption law to the Thaws and determined, after a factual analysis, that the Thaws had not satisfied Texas's requirements to transfer their homestead from the Pelican Bay property to the Brandywine property. We agree.

**III.**

Because § 52.042 does not release Schachar's lien on the Brandywine property and because the Thaws have not established the property as their homestead under Texas law, that property is not immune from sale in the bankruptcy proceeding and Schachar is entitled to the portion of the proceeds equaling the value of his lien. Therefore, the district court's judgment is AFFIRMED.