Joseph ONWUTEAKA, Appellant,

v.

Jay COHEN, Hearthwood II Home-
owners Association, Inc., and
Nancy Groves, Appellees.

No. 01–91–00213–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 14, 1993.

Rehearing Denied March 11, 1993.

Joseph Onwuteaka, Houston, for appellant.

Jay S. Ginsburg, Bellaire, Jeffrey D. Roberts, Jeffrey P. Hintermeister, M. Karinne McCullough, Gregg S. Weinberg, Houston, for appellees.

Before OLIVER–PARROTT, C.J., and MIRABAL and PRICE,[1] JJ.

## OPINION

MIRABAL, Justice.

Appellant, Joseph Onwuteaka, filed suit alleging wrongful foreclosure, conversion, and fraud in connection with a foreclosure sale of his condominium. After a bench trial, the court ruled in favor of the defendants, and rendered a take-nothing judgment against Onwuteaka. We affirm.

Onwuteaka complains about the legal sufficiency of the evidence to support the trial court's findings of fact. The following facts are uncontroverted: Onwuteaka is an attorney and CPA. He owned the condominium unit made the subject of this suit. Onwuteaka was plaintiff pro se in the trial court, and represents himself on

---

1. The Honorable Frank C. Price, former Justice, Court of Appeals First District of Texas at Houston, sitting by assignment.

this appeal. Appellee, Hearthwood II Homeowner's Association, Inc., is a non-profit corporation created to manage the 321-unit property where the condominium unit is located, and to enforce the restrictive covenants under the condominium declaration. The Association initiated the foreclosure of Onwuteaka's condominium as a result of his non-payment of maintenance fees. Appellee, Jay I. Cohen, is an attorney and was the trustee appointed to handle the foreclosure on Onwuteaka's unit. Appellee, Nancy Groves, is a private real estate investor and was the highest bidder at the public foreclosure sale.

On March 13, 1989, Onwuteaka purchased condominium unit D22 at a foreclosure sale for $11,250. He installed new carpets, drapes, and appliances, and then rented the unit in May 1989 for $350 a month.

Onwuteaka purchased the unit subject to the condominium declaration on file in the Harris County Real Property Records. Onwuteaka never saw nor received a copy of the declaration. The condominium declaration requires all owners to contribute to the common expenses of the complex, stating: "Assessments for the estimated Common Expenses shall be due monthly in advance on or before the first (1st) day of each month." The Association has a lien on each unit for unpaid assessments. Onwuteaka never paid the monthly maintenance fee assessed on the unit. The Association had established a policy to send accounts over 80 days in arrears to Cohen for collection. Onwuteaka's account was eight months in arrears when the notice of foreclosure was sent.

The condominium declaration provides for notices to be mailed to an owner in care of the condominium unit. The Association mailed all monthly maintenance assessments to Onwuteaka at the condominium unit. All assessments and notices, including a welcoming packet, were returned "addressee unknown."

Cohen sent a demand letter dated September 11, 1989, by certified mail, return receipt requested, to Onwuteaka at his condominium address; the letter was returned undelivered to Cohen, marked "Attempted-addressee not known." Cohen sent a second demand letter, dated September 27, 1989, by regular mail to Onwuteaka; it is not clear whether this letter was returned undelivered. On December 12, 1989, Cohen sent, by certified mail, return receipt requested, a "Notice of Intended Foreclosure Sale" to Onwuteaka at his condominium address; this letter apparently was also returned to Cohen undelivered. On January 2, 1990, Cohen conducted the foreclosure sale on the condo at the Harris County courthouse, and executed a trustee's deed conveying title to Nancy Groves. Groves was the highest bidder and paid $2,651. Groves testified that similar units in the complex had sold within the month for $8,000. Onwuteaka testified the unit was worth about $30,000 at the time of the sale.

Onwuteaka brought suit against the appellees for: (1) wrongful foreclosure, alleging he was not notified as required by statute; (2) conversion, because the sale divested him of his rightful property; and (3) conspiracy to defraud.

After a bench trial, the trial court made the following findings of fact:

1. Joseph Onwuteaka, although on record notice of the maintenance assessment lien and private power of sale in foreclosure thereof in favor of Hearthwood II Homeowners Association, Inc., wholly failed to pay any monthly maintenance assessment after he purchased the subject property.

2. The association made adequate and timely demand for payment of the monthly maintenance assessment, and notice of intended Trustee sale to Mr. Onwuteaka at the address of the subject property.

3. The trustee's sale to Nancy Groves was regular and proper in all respects, and without the taint of conspiracy.

4. All duties owed by Jay I. Cohen to Mr. Onwuteaka were fully, duly and timely performed, and performed in good faith with fair dealing.

In each point of error, Onwuteaka asserts the trial court erred in failing to make findings in his favor. When findings

of fact and conclusions of law are filed in a case tried to the court, the findings have the same force and dignity as a jury's verdict upon special issues. *City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). When a complete statement of facts also appears in the record, the trial court's findings of fact are not conclusive. *Middleton v. Kawasaki Steel Co.,* 687 S.W.2d 42, 44 (Tex.App.— Houston [14th Dist.]), *writ ref'd n.r.e. per curiam,* 699 S.W.2d 199 (Tex.1985). The trial court's findings are reviewable for legal and factual sufficiency by the same standards applied in reviewing legal and factual sufficiency of the evidence to support a jury's answer to a jury question. *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex. Civ.App.—Dallas 1981, writ ref'd n.r.e.); *First Nat'l Bank v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.).

■ We construe appellant's complaint to be that, as a matter of law, the trial court should have made different findings. In reviewing a "matter of law" challenge, the reviewing court employs a two-prong test. The court will first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* If the contrary proposition is established conclusively by the evidence, the point of error will be sustained. *Meyerland Community Improvement Ass'n v. Temple,* 700 S.W.2d 263, 267 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

In point of error one, Onwuteaka asserts the trial court erred in failing to find that he was not given 21–days notice prior to the foreclosure sale. Article 51.002(b) of the Texas Property Code provides in relevant part:

(b) Notice of the sale, which must include a statement of the earliest time at which the sale will occur, must be given at least 21 days before the date of the sale:

. . . .

(3) by the holder of the debt to which the power of sale is related serving written notice of the sale by certified mail on each debtor who, according to the records of the holder of the debt, is obligated to pay the debt.

TEX.PROP. CODE ANN. § 51.002(b)(3) (Vernon Supp.1993).

Onwuteaka first argues neither the Association nor Cohen gave him the required statutory notice because the notices were sent to the condominium unit rather than to his business address.

■ "Service of a notice [of trustee sale] by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address as shown by the records of the holder of the debt." TEX.PROP.CODE ANN. § 51.002(e) (Vernon Supp.1993). The general purpose of the statute is to provide a minimum level of protection for the debtor, and it provides for only constructive notice of the foreclosure. *Krueger v. Swann,* 604 S.W.2d 454, 457 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.) (interpreting TEX.REV.CIV.STAT. ANN. art. 3810, the predecessor statute).[2] To establish a violation of the statute, it must be shown that the holder of the debt had in its records the most recent address of the debtor and failed to mail a notice by certified mail to that address. *Id.*

■ Section 8.5 of the condominium declaration provides, "All notices, demands or other notices intended to be served upon an Owner shall be sent by ordinary or certified mail, postage prepaid, addressed in the name of such Owner in care of the Unit number and Building address of such Owner." Harley Bonds, the representative of the management company employed by the Association, testified all notices were sent to the address of the property unless otherwise notified. The evidence shows the no-

**2.** Act of June 21, 1975, 64th Leg., R.S., ch. 723, § 1, 1975 Tex.Gen.Laws 2354, *repealed by* Act of June 19, 1983, 68th Leg., R.S., ch. 576, § 6, 1983 Tex.Gen.Laws 3729.

tices were sent to Onwuteaka's last known address as reflected in the records of the Association. The recorded deed conveying title to Onwuteaka showed Onwuteaka's address as the condominium unit. Cohen testified a title search was conducted before the foreclosure sale notice was sent, and the search reflected Onwuteaka's address was the condominium unit address. Cohen also testified that, before the foreclosure sale notice was sent, his office conducted a "skip search" through a credit service to try to get a good address for Onwuteaka, but was unsuccessful.

Onwuteaka admitted he never contacted the Association prior to foreclosure to give his correct mailing address. He admitted the notices were sent to the condominium unit, "one of the properties I own." Nevertheless, Onwuteaka argues his business address should have been used. He introduced his earnest money contract reflecting that address, and testified he received his title policy there. However, there is no evidence in the record to show the earnest money contract or the business address was on file with the Association.

Onwuteaka next argues he was not provided proper statutory notice because he got only 20, rather than 21, days notice. He argues the notice period was miscalculated because both the day of the foreclosure sale and the day the notice is posted and sent should not be counted.

■ Section 1.002 of the Texas Property Code provides "[t]he Code Construction Act applies to the construction of each provision of this code, except as otherwise expressly provided by this Code." TEX.PROP. CODE ANN. § 1.002 (Vernon 1990). Section 51.002, the applicable section in this case, does not have an express provision governing the computation of the 21–day notice requirement. Therefore, Section 311.014(a) of the Code Construction Act applies. TEX. GOV'T CODE ANN. § 311.014(a) (Vernon 1988).

Section 51.002(b) states, in part, that "notice of the sale must be given at least 21 days before the date of the sale" by depositing the notice in the U.S. mail, postage prepaid and properly addressed. TEX.PROP. CODE ANN. § 51.002(b) (Vernon Supp.1993).

Section 311.014(a) provides, in pertinent part, "In computing a period of days, the first day is excluded and the last day is included." TEX.GOV'T CODE ANN. § 311.-014(a) (Vernon 1988).

■ It is uncontroverted the notice of sale was mailed to Onwuteaka on December 12, 1989. The date of the mailing is the date of "service" of the notice of sale. TEX.PROP.CODE ANN. § 51.002(e) (Vernon Supp.1993). In computing the 21 day period, the day of the sale, January 2, 1990 here (the first day of the computation), is excluded, and the day of the mailing (the last day of the computation) is included. *Bryant v. Texas Am. Bank/Levelland,* 795 S.W.2d 915, 916 (Tex.App.—Amarillo 1990, writ dism'd by agr.); *Hausmann v. Texas Savings & Loan Ass'n,* 585 S.W.2d 796, 801 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.). Therefore, counting January 1, 1990, and each day back to December 12, 1989, we count 21 days. The notice of sale was put in the mail December 12, 1989, 21 days before the date of sale. We hold that, because notice was deposited in the mail on December 12, 1989, "notice of the sale [was] given 21 days before the date of the sale," and therefore Onwuteaka was provided the requisite 21–day notice.

We conclude there is legally sufficient evidence to support the trial court's finding that Onwuteaka was given the required notice of the trustee sale. We overrule point of error one.

In points of error two and three, Onwuteaka asserts the trial court erred in failing to find the sale was at a grossly inadequate price due to "irregularity, conspiracy, and fraud." Specifically, he maintains the buyer was chosen and the sale price determined before the foreclosure sale.

■ The mere inadequacy of consideration is not grounds for setting aside a trustee's sale if the sale was legally and fairly made. *American Sav. & Loan Ass'n v. Musik,* 531 S.W.2d 581, 587 (Tex. 1975); *Greater Southwest Office Park, Ltd. v. Texas Commerce Bank,* 786 S.W.2d 386, 388 (Tex.App.—Houston [1st Dist.] 1990, writ denied). To invalidate a trust-

ee's sale, there must additionally be evidence of an irregularity in the sale. *Id.*

■ Onwuteaka asserts, in addition to lack of proper notice of sale, the irregularity that caused or contributed to cause the grossly inadequate sales price in this case is "the conspiracy and fraudulent act" of the appellees. In support of his theory, Onwuteaka points to:

(1) A notation, "Nancy Groves $2651," made on the Notice of Lien Foreclosure Sale file stamped on December 12, 1989;

(2) A purchase by Groves of a condominium unit at a prior foreclosure sale on September 6, 1989, also conducted by Cohen, for $2,600.

Onwuteaka argues it is clear Cohen and Groves "were related parties who were engaged in selling [and] purchasing condominium units for approximately $2,600.... [They] conspired ... and decided on the sale price prior to the foreclosure sale."

In contrast to Onwuteaka's theory, there is evidence the notation of the buyer and price, which appears on the *copy* of the notice in evidence, was not placed on the notice *prior to* the foreclosure sale. Onwuteaka did not produce a certified copy of the notice for trial. Cohen testified the notation was made on his copy of the notice *after the sale.*

Q: [A]nd what is that?

A: This is the original notice of lien foreclosure sale.

Q: Have you maintained possession of that ever since you filled it out and had it stamped by the county?

A: Once I received it back from Constable Rankins' office, yes.

    .    .    .    .    .

Q: [A]nd this handwriting up here on the left side. It says, "Nancy Groves," and it looks like "2651." Do you know whose handwriting that is?

A: Yes, I do.

Q: Whose is it?

A: It's mine.

Q: And when was that placed on that document?

A: On January 2, 1990, at the time of the foreclosure sale.

Cohen's testimony was not disputed.

There is also evidence that there was no connection between the previous condominium purchase by Groves, and the foreclosure sale at issue. Cohen testified, "The only time I have seen [Groves] has been at the courthouse.... Either at the foreclosure sales or at the hearing on this matter." Groves also testified that, with the exception of the court hearings, she had never seen Cohen outside of foreclosure sales. Each appellee denied a conspiracy or participation in a conspiracy. Further, Cohen testified the foreclosure in this case was, "completely routine." He also testified Groves was not the only bidder, that there were "[a]t least two others and maybe three, if I recall."

The evidence is sufficient to support the trial court's conclusion that Onwuteaka failed to prove his theory of fraud and conspiracy. In the absence of any irregularity in the sale, the trial court was not required to make a finding about whether the sale price was grossly inadequate.

We overrule points of error two and three.

In point of error four, Onwuteaka asserts the trial court erred in failing to find the trustee "did not have authority to proceed with the foreclosure sale until the effective date" of the appointment of trustee. Although the appointment of trustee was "executed" December 12, 1989, the acknowledgment on the document was dated December 20, 1989. Onwuteaka asserts the "effective date" of the appointment was the date of the acknowledgment, December 20, 1989. Therefore, he argues, Cohen did not have authority to file the notice of foreclosure on December 12, 1989.

■ The general purpose of an acknowledgment is to authenticate an instrument as being the act of the person executing the instrument. *Punchard v. Masterson,* 100 Tex. 479, 101 S.W. 204, 205 (1907); *Shelton v. Swift Motors, Inc.,* 674 S.W.2d 337, 342 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). In order to be recorded in the real property records, an acknowledgment

is necessary. TEX.PROP.CODE ANN. § 12.001 (Vernon Supp.1993). However, there is no requirement that an appointment of trustee be acknowledged by a notary public before it is effective. The evidence supports the conclusion that the effective date of the appointment was the date it was signed, December 12, 1989.

We overrule point of error four.

In point of error five, Onwuteaka asserts the trial court erred in failing to find the trustee did not comply with the duties mandated in the appointment of trustee. Specifically, he points to the paragraph requiring the trustee to provide the Association with several signed copies of the notice of sale "so the notice thereof can be served at least 21–days preceding the sale."

The evidence is clear that Cohen acted as the authorized agent for the Association in posting, filing, and mailing the notice of sale. Onwuteaka's argument is without merit. We overrule point of error five.

We affirm the judgment.