Opinion issued on August 29, 2002



 








In The

Court of Appeals

For The

First District of Texas






NO. 01-00-00211-CV






EMIGDIO BENITEZ, Appellant


V.


SYLVIA ANN PERALES AND BOB CAVENDER, Appellees






On Appeal from the 113th District Court of

Harris County, Texas

Trial Court Cause No. 98-36588






O P I N I O N


 Appellant, Emigdio Benitez (Benitez), is appealing a summary judgment in
favor of appellees, Sylvia Ann Perales (Perales) and Bob Cavender (Cavender). In
one issue, Benitez claims the trial court erred by granting summary judgment on his
wrongful foreclosure claim. We affirm. 

Factual Background

 On or about December 7, 1993, Benitez and Perales were divorced. Benitez
was awarded, among other things, "two houses located at 28 and 30 Avenue N,
Houston, Texas." In exchange for receiving the houses, Benitez agreed to name
Perales primary beneficiary of two deeds of trust that would encumber the houses. 
The first deed of trust secured payment of the original mortgage, which Benitez
agreed to assume, and the second deed of trust secured payment of a $2,500
promissory note. (1) 

 On January 19, 1996, Charles C. Wright, the original trustee of both deeds of
trust, sent Benitez a "notice of default." The notice informed Benitez that he was in
default because (1) he failed to pay the 1994 and 1995 school taxes totaling $668.17,
(2) he failed to pay the Harris County taxes totaling $268.32, and (3) he never
provided Perales with proof that the properties were insured. Wright demanded that
Benitez cure all defects on or before February 9, 1996. Otherwise, Perales would
accelerate the notes and foreclose on the properties. 

 On February 17, 1996, eight days after the cure period ended, Benitez received
a notice of acceleration from Cavender, the new substitute trustee. (2) Cavender advised
Benitez that, because he failed to cure his default, the underlying notes were
accelerated and immediately due and payable in full. The notice further advised
Benitez that the property would be posted for foreclosure, and that a notice would be
sent to him not less than 21 days prior to the sale. Ten days later, and more than 21
days before the proposed date of sale, Benitez received notice from Cavender that the
foreclosure sale would take place on April 2, 1996, between the hours of 10:00 a.m.
and 4:00 p.m. 

 On April 2, 1996, Benitez filed proceedings in bankruptcy court, and the
automatic stay provisions of the bankruptcy code precluded the foreclosure sale from
proceeding. However, on June 21, 1996, Benitez's bankruptcy case was dismissed
and the automatic stay was lifted. (3) 

 Cavender then sent Benitez another notice by certified letter, to his current
mailing address. The notice informed Benitez that he was in default, that the notes
had been accelerated, and that a foreclosure sale would take place on August 6, 1996. 
The next day, Cavender posted a notice of sale at the Harris County courthouse and
filed a copy of the notice with the Harris County clerk's office. The foreclosure sale
was held at the advertised time and place, and the properties were sold to Perales for
$1,113.32. (4) Cavender then executed a substitute trustee's deed conveying the
property to Perales, and Benitez was evicted.

 Benitez sued Perales and Cavender for wrongful foreclosure and sought
rescission of the sale, as well as damages. In his petition, Benitez claimed the notes
were improperly accelerated because he was not in default; he further alleged he
never received a notice of intent to accelerate or an opportunity to cure. All parties
filed summary judgment motions, (5) and, on December 1, 1999, the trial court signed
an order that granted Perales's and Cavender's motion for summary judgment and
denied Benitez's motion for partial summary judgment. This appeal followed.

Motion to Dismiss

 In a motion to dismiss this appeal, Perales and Cavender claim this court lacks
jurisdiction because Benitez failed to timely file his notice of appeal. 

 As a general rule, the periods within which parties may file various post-judgment motions, and trial courts may exercise their plenary jurisdiction, all run
from the date the judgment is signed. See John v. Marshall Health Serv., Inc., 58
S.W.3d 738, 740-41 (Tex. 2001); see also Tex. R. Civ. P. 306a(1), 329b. Once the
judgment is signed, the trial court's clerk must notify the parties or their attorneys
about the trial court's ruling. Id. at 306a(3); Marshall Health Serv., 58 S.W.3d at
740-41. 

 However, if the party adversely affected by the court's ruling does not receive
notice from the clerk or acquire actual knowledge of the signing of the judgment
within 20 days, then the appellate timetable begins to run from the date the adverse
party receives such notice or acquires actual knowledge of the judgment. (6) Tex. R.
Civ. P. 306a(4); Marshall Health Serv., Inc., 58 S.W.3d at 741. In order to invoke
this exception, the movant must prove to the trial court, on sworn motion and notice,
the date on which the party or his attorney first either received a notice of the
judgment or acquired actual knowledge of the signing of the judgment, and that this
date was more than 20 days after the judgment was signed. Tex. R. Civ. P. 306a(5);
Marshall Health Serv., 58 S.W.3d at 741.

 In this case, the undisputed evidence shows that, on December 1, 1999, the trial
court entered summary judgment for Perales and Cavender, and denied Benitez's
motion for partial summary judgment. During the next three days, Benitez received
two separate notices (7) from the trial court. The first notice stated that the case had
been reset for trial on February 28, 2000, and the second notice informed Benitez that
the trial court was "denying [his] partial summary judgment." Benitez did not receive
notice of the court's entry of a take-nothing summary judgment against Benitez until
several months after the judgment had been signed.

 Finally, on January 24, 2000, almost two months after the trial court entered
summary judgment in favor of Perales and Cavender, Benitez received a third post
card notice which stated,

 Be advised on 12/01/1999 the following activity occurred. 
Final summary judgment signed.


Within 30 days of receiving this notice, Benitez filed a motion for new trial. In a
sworn affidavit, attached to his motion, Benitez's counsel expressly stated that he had
no actual knowledge or notice that the judgment was signed until January 24, 2000,
the date he received the third postcard notice from the trial court. 

 We hold that the undisputed evidence shows that Benitez complied with rule
306a(5), extended the appellate timetable, and timely filed his notice of appeal on
February 28, 2000. Accordingly, we overrule the motion to dismiss.

Summary Judgment

 Benitez claims the trial court erred by granting summary judgment because a
genuine issue of material fact existed regarding (1) whether he received sufficient
notice of acceleration, (2) whether he was in default on the notes, (3) whether Perales
and Cavender waived their right to accelerate by accepting a late payment, and (4)
whether the sale price of the houses was "grossly inadequate."

 Standard of Review

 Both Perales and Cavender filed traditional motions for summary judgement
under rule 166a(c) of the Texas Rules of Civil Procedure. Tex. R. Civ. P. 166a(c). 
We follow the usual standard of review. Science Spectrum, Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997); Marchal v. Webb, 859 S.W.2d 408, 412 (Tex.
App.--Houston [1st Dist.] 1993, writ denied).

 Failure to give Notice


 In Texas, when a secured promissory note gives the holder the option, upon
notice, to accelerate the maturity of the note upon the maker's default, as in this case,
notice of several events is necessary. See Holy Cross Church of God in Christ v.
Wolf, 44 S.W.3d 562, 566-67 (Tex. 2001) (citing Ogden v. Gibraltar Sav. Ass'n, 640
S.W.2d 232, 233 (Tex. 1982)); see also Tex. Prop. Code Ann. § 51.002 (Vernon
Supp. 2002). First, the holder of the note must present the note before accelerating
it, provide a time to cure, and advise the maker that the note will be accelerated and
the entire balance will become due and payable if the delinquency is not satisfied. 
Ogden, 640 S.W.2d at 233; Tex. Prop. Code Ann. § 51.002. Second, after the time
to cure has passed, the holder must give notice that the debt has been accelerated. 
Ogden, 640 S.W.2d at 233. Both notices must be "clear and unequivocal." Id.

 In this case, the undisputed summary judgment evidence shows that Perales and
Cavender provided Benitez with both a notice of intent to accelerate as well as a
notice of acceleration. Benitez received a "notice of default" letter dated January 19,
1996 which notified him that Perales intended to accelerate the notes unless he cured
his default. Specifically, the letter stated,

 You [Benitez] have violated the terms of both of the above
described Deeds of Trust in that you have failed to pay the
1994 and 1995 taxes, which total approximately $668.17,
and the 1995 Harris County tax for approximately $268.32,
on the property covered by the deeds of trust. In addition,
in spite of my client's demands, you have not provided
proof that the property is insured as required by both
Deeds.


 Demand is hereby made that on or before February 9, 1996,
you must (1) pay all past due taxes on the property and (2)
provide my client proof that the property is insured.


 If all of the above is not performed by February 9, 1996,
my client shall accelerate the maturity of said promissory
note, declare the entire balance due and payable
immediately, without further demand, and will proceed to
foreclose and sell the above referenced property at public
auction in accordance with the terms of the above
referenced Deeds of Trust.


 More than a week after the cure period ended, Benitez received a second
notice, dated February 17, 1996, which stated,

 You [Benitez] were notified of your default on January 19,
1996 by Charles Curry Wright, the original trustee, and
given the opportunity to cure the default by February 9,
1996. You have failed to cure the default and the maturity
of the unpaid balance of the principal on the $2,500.00
note has been accelerated and the entire unpaid principal
balance plus all accrued and earned interest is immediately
due and payable.


 . . . .


 As substitute Trustee on the Deeds of Trust described
above I intend to post the property for foreclosure. . . . 


 On July 15, 1996, Cavender sent Benitez a third and final notice which stated,

 You have been delinquent in the payment of your
installments on the above described notes. Therefore, I
have been instructed to commence foreclosure proceedings
under said Deeds of Trust. This is to notify you that the
balance of said $2,500.00 note has been accelerated and
that, as of this date, the entire remaining balance on said
note, together with all accrued interest and 10% attorney's
fees, is due and payable.


 THIS IS THE ONLY NOTICE YOU WILL RECEIVE. 
Unless payment in full is received, the property will be sold
at Trustee's Sale to the highest bidder for cash. Enclosed
herewith is a Notice of Trustee's Sale to sell the property
therein described on Tuesday, August 6, 1996, between the
hours of 10:00 a.m. and 4:00 p.m.


 We hold that the Perales and Cavender, as a matter of law, provided Benitez
with both notice of intent to accelerate and notice of acceleration. Id.

 Insufficient Notice

 Benitez also argues that he received "insufficient notice" because he was in
Mexico and never received the July 15, 1996 notice. (8) 

 Service of notice is considered complete when the notice is deposited in the
United States mail, postage prepaid, and addressed to the debtor's last known address
as shown by the records of the holder of the debt. Tex. Prop. Code Ann. § 51.002(e)
(Vernon Supp. 2002). The purpose of the statute is to provide a minimum level of
protection for the debtor, and it provides for only constructive notice of the
foreclosure. Onwuteaka v. Cohen, 846 S.W.2d 889, 892 (Tex. App.--Houston [1st
Dist.] 1993, writ denied); Hausmann v. Texas Sav. & Loan Ass'n, 585 S.W.2d 796,
799 (Tex. App.--El Paso 1979, writ ref'd n.r.e.). There is no requirement that
Benitez actually receive the notice. See Martinez v. Beasley, 616 S.W.2d 689, 690
(Tex. App.--Corpus Christi 1981, no writ). 

 Whether Benitez was in Default

 Benitez also claims summary judgment was improper because he was not in
default at the time of the foreclosure sale. However, in Texas, once the defaulting
party receives an acceleration notice, it "cuts off the debtor's right to cure the default
and gives notice that the entire debt is due and payable." Ogden, 640 S.W.2d at
233; see also Cruce v. Eureka Life Ins. Co. of Am., 696 S.W.2d 656, 659 (Tex.
App.--Dallas 1985, writ ref'd n.r.e) (citing Faulk v. Futch, 214 S.W.2d 614 (Tex.
1948)); Bodiford v. Parker, 651 S.W.2d 338, 339 (Tex. App.--Fort Worth 1983, no
writ); Tamplen v. Bryeans, 640 S.W.2d 421, 422 (Tex. App.--Waco 1982, writ ref'd
n.r.e).

 In this case, Cavender sent Benitez's notice of acceleration on February 17,
1996. As of this date, Benitez's right to cure was "cut off" and the note was
immediately due and payable. See Ogden, 640 S.W.2d at 233. Any attempt by
Benitez to pay his back due taxes or provide Perales with proof of insurance after this
date would not prevent the foreclosure. In order to prevent the sale, Benitez had to
pay the full balance on the note. According to the summary judgment evidence, this
he failed to do. 

 Waiver by Acceptance of Late Payment

 Benitez also claims that a genuine issue of material fact exists as to whether
Perales and Cavender waived their right to accelerate the notes by accepting a late
payment. In support of his argument, Benitez directs the court's attention to two
cases, both of which are factually distinguishable from the present case. McGowan
v. Pasol, 605 S.W.2d 728, 732 (Tex. App.--Corpus Christi 1980, no writ) and Matter
of Marriage of Rutherford, 573 S.W.2d 299, 301 (Tex. App.--Amarillo 1978, no
writ). In both Pasol and Rutherford, the court held that, when the holder of the note
has accepted late payments on numerous occasions in the past, he is generally
precluded from accelerating the maturity of an installment note because of a single
late payment unless he has, prior to the late payment for which default is claimed,
notified the maker that in the future he will not accept late payments. Pasol, 605
S.W.2d at 732; Rutherford, 573 S.W.2d at 301.

 However, in this case, there is no evidence in the record that Perales or
Cavender ever accepted late payments prior to the notes being accelerated on
February 17, 1996. Moreover, the record indicates that Benitez defaulted on the notes
because he also (1) failed to pay taxes and (2) failed to furnish proof of insurance. 
We hold that neither Perales nor Cavender waived their right to accelerate the notes
by accepting payments after acceleration had already occurred.

 Grossly Inadequate Consideration

 Finally, Benitez claims the foreclosure sale was invalid because the sales price
was "grossly inadequate" to its market value. However, inadequacy of consideration
alone does not render a foreclosure sale void if the sale was "legally and fairly made." 
See American Sav. & Loan Ass'n v. Musick, 531 S.W.2d 581, 587 (Tex. 1975); see
also Tarrant Sav. Ass'n v. Lucky Homes, Inc., 390 S.W.2d 473, 475 (Tex. 1965);
Maupin v. Chaney, 163 S.W.2d 380 (1942); Onwuteaka, 846 S.W.2d at 892; Pentad
Joint Venture v. First Nat'l Bank, 797 S.W.2d 92, 96 (Tex. App.--Austin 1990, writ
denied); Donaldson v. Mansel, 615 S.W.2d 799, 802 (Tex. App.--Houston [1st Dist.]
1981, writ ref'd n.r.e.). There must also be evidence of some irregularity, such as
fraud, conspiracy, or price chilling, that caused or contributed to a sale for a grossly
inadequate price. See Musick, 531 S.W.2d at 587; Mansel, 615 S.W.2d at 802. 

 In this case, no irregularities in the foreclosure sale are raised by the summary
judgment evidence. Therefore, Benitez failed to raise a fact issue regarding whether
the properties were sold for a grossly inadequate price. See Tarrant Sav. Ass'n, 390
S.W.2d at 475 (holding that party claiming inadequate sales price must raise fact issue
with respect to propriety of sale). 

 Moreover, there is no evidence in the record regarding the fair market value of
the property at the time of the sale. Therefore, there is no evidence to raise a fact
issue tending to prove the consideration received for the property was grossly
inadequate. Gainesville Oil & Gas Co., Inc. v. Farm Credit Bank of Texas, 847
S.W.2d 655, 661-63 (Tex. App.--Texarkana 1993, no writ) (holding fact issue did
not exist regarding inadequate sale price where there was no evidence of land's
market value at time of foreclosure sale). 

 Accordingly, we overrule Benitez's sole point of error.





Conclusion

 We affirm the trial court's judgment.



 Margaret Garner Mirabal

 Justice


Panel consists of Justices Mirabal, Hedges, and Jennings.

Do not publish. Tex. R. App. P. 47.4.
1. The $2,500 note was repayment for the purchase price of the home.
2. Perales hired Cavender to oversee the foreclosure sale.
3. Both the bankruptcy trustee and Benitez filed motions to dismiss the
bankruptcy proceedings.
4. Perales purchased the properties subject to the underlying mortgage.
5. Benitez filed a motion for partial summary judgment, while Perales and
Cavender filed a motion for a final, take-nothing summary judgment.
6. This time period cannot begin more than 90 days after the original judgment
or other appealable order was signed. Tex. R. Civ. P. 306a(4).
7. Benitez does not dispute receiving either of these notices.
8. Benitez's reliance on Mitchell v. Texas Commerce Bank-Irving is misplaced. 
In Mitchell, the court held that notice of acceleration was insufficient because
the bank sent it to the debtor's old mailing address instead of his current
mailing address. 680 S.W.2d 681, 682-83 (Tex. App.--Fort Worth 1984, writ
ref'd n.r.e). In this case, the undisputed evidence shows that Cavender sent all
three notices to Benitez's current mailing address. The summary judgment
record shows that Benitez left for Mexico after July 31, 1996. The July 15,
1996 notice of sale was sent certified mail return receipt requested, and the
postal service gave notice on July 20, July 25 and August 4, 1996 to Benitez
that he had a certified letter to pick up. The July 20, 1996 postal notation
indicates the letter was refused on July 20.