

## NUMBER 13-07-069-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

LINDA SUSANNE KING,                                                    Appellant,

v.

BANK OF NEW YORK AND
COUNTRYWIDE HOME LOANS, INC.,                              Appellees.

On appeal from the 36th District Court
of San Patricio County, Texas

## MEMORANDUM OPINION

Before Justices Rodriguez, Garza, and Vela
Memorandum Opinion by Justice Vela

Appellant, Linda Susanne King, appeals from an adverse jury verdict. In three issues, she argues that the trial court submitted an incorrect jury instruction and erred in not submitting her proposed jury instructions. We affirm.

## I. BACKGROUND

In April 2000, Linda King and her husband Christopher King purchased a home at 111 Driftwood Drive in Portland. A year later, they refinanced with a mortgage, which eventually came to be owned by Bank of New York and was serviced by Countrywide Home Loans, Inc. ("Countrywide"). The Kings separated in January 2003, and Christopher began staying alternately with his parents in Portland and an address in Beeville. He filed for bankruptcy in May and used his parents' address for those proceedings. Attorneys for Principal, the company that was servicing the mortgage at that time, were present for the bankruptcy proceedings and noted Christopher's new address in their records, though they did not change his mailing address.[1] Christopher filed for divorce in June. During the entire time period at issue, however, he continued to pick up mail, including mortgage bills, from 111 Driftwood Drive whenever he was either picking up or dropping off the couple's children.

Linda claims that Christopher agreed to pay the mortgage after he moved out, but the Kings were frequently behind on payments throughout 2003 and 2004, resulting, according to Countrywide's records, in several warning letters and phone calls. Linda claimed that she received only some of these letters and phone calls. In October 2004, Linda and Countrywide worked out a repayment plan to get the mortgage out of default.

By December, however, the Kings were again delinquent and Countrywide sent two notices to 111 Driftwood Drive, one addressed to Linda and the other to Christopher,

---

[1]The bankruptcy had no impact on Christopher's status as a co-debtor for the mortgage. Principal's only involvement in the bankruptcy proceedings seems to be have been to ensure that the mortgage was not discharged by the bankruptcy court.

notifying each that the mortgage was in default and Countrywide would seek to foreclose if the default was not cured. The letters, sent by certified mail, went unclaimed and were returned to Countrywide. On January 27, 2005, Countrywide sent certified letters to Christopher and Linda notifying them that Countrywide would sell the home on March 1. These letters also went unclaimed and were returned. The home was sold, and, after being served with eviction papers, Linda and her children left the home on April 18. She claims the first time she learned of the foreclosure was when she was served with the eviction papers.

Linda filed suit in July 2005, against Bank of New York, Countrywide, and the trustees hired to foreclose on the property. She alleged that she was statutorily entitled to two notices, a notice of default that would have presented her with an opportunity to cure the default, and a notice of foreclosure advising her that the house was being sold. She claimed that Countrywide had failed to give her either. Moreover, Linda claimed that Christopher was entitled to the same notices, and that his notices should have been mailed to his parents' address, which he had used for his bankruptcy proceedings and had been noted in files that Countrywide received when it began servicing the Kings' mortgage. Linda pleaded that Countrywide's failure to provide proper notice to each of them made the foreclosure illegal.

The trial court dismissed the claims against the trustees, and the remaining parties went to trial in October 2006. At trial, Countrywide produced evidence that notices had been sent via certified mail to Linda and Christopher at 111 Driftwood Drive, but were unclaimed and returned to Countrywide. Linda claimed she had never received the letters. Countrywide admitted that it had sent Christopher's notices to 111 Driftwood Drive, which

3

it claimed was his last known address.

At the end of the trial, the court ordered a directed verdict in favor of Bank of New York, leaving Countrywide as the sole defendant. The jury was given two preliminary questions. The first asked whether Countrywide failed to give Linda a notice of default and a notice of intent to accelerate; the second asked whether Countrywide failed to give notice to Christopher at his last known address. On both questions, the jury found that Countrywide sent the notices, and the trial judge entered a take-nothing judgment.

## II. APPEAL AND THEORY OF RECOVERY

On appeal, Linda does not dispute the jury's finding that Countrywide sent notice to her. She also does not seem to dispute that Countrywide sent notice to Christopher at 111 Driftwood Drive. Rather, she only contests the instruction given in the second jury question.

The legislature has established a statutory scheme to provide debtors with notice before a mortgage company can foreclose. There are two types of required notice: notice of default, and notice of foreclosure. *See* TEX. PROP. CODE ANN. § 51.002(b)(3), (d) (Vernon 2007). A mortgage holder must send a notice of default only if the mortgage is for property used as the debtor's residence. *See id.* § 51.002(d). A notice of default provides the debtor with twenty days in which to cure the default. *Id.* Only after those twenty days, if the default has not been cured, can the mortgage company send a notice of foreclosure. *See id.*

A notice of foreclosure does not necessarily include an opportunity to cure; it is simply a notice of when and where a foreclosure sale will occur. *See id.* at § 51.002(b). Notices of foreclosure are required for all foreclosures, regardless of whether the property

4

is used as a residence. *Id*. A mortgage holder must send the debtor a notice of foreclosure at least twenty-one days before the sale occurs. *Id*. at § 51.002(b)(3).

Importantly, both of these notices are constructive. Service of a notice is considered complete when the mortgage holder mails the notice via certified mail, and an affidavit of a person knowledgeable of the facts stating that the notice was mailed is considered prima facie evidence of service. *Id*. at § 51.002(e); *Onwuteaka v. Cohen*, 846 S.W.2d 889, 892 (Tex. App.–Houston [1st Dist.] 1993, writ denied). Whether the debtor actually receives the notice is irrelevant for statutory purposes. To show a violation, the debtor must show that the mortgage holder did not mail the required notice by certified mail to the debtor's last known address. *Onwuteaka*, 846 S.W.2d at 892.

At this point, Linda's only remaining theory is: (1) Countrywide failed to send notice to Christopher at his parents' address; (2) if Christopher had received the notice at his parents' address, this would have served as a second level of notice to ensure that she knew of the foreclosure; (3) once advised by Christopher of the foreclosure, she would have had access to sufficient funds to cure the default; and thus (4) the foreclosure was improper, and harmed her.[2] She claims that the trial court's improper jury instruction for the second question gave the jury the wrong definition of "last known address," and this error probably led to an improper judgment. In three issues, Linda argues that the trial court erred (1) in refusing her first proposed jury instruction; (2) in using improper statutory language in the submitted jury instruction; and (3) in refusing her second requested jury

---

[2]Linda's theory rests on the premise that she may enforce Christopher's right to receive notice. Christopher is not a party to this suit. In addressing this issue, we need not determine if this premise has merit. The appellees do not challenge on this ground, and the answer to that question would not alter the final disposition of this case.

instruction.

## III. STANDARD OF REVIEW

Texas Rule of Civil Procedure 277 states that "the court shall submit instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277. Though a trial court must explain legal or technical terms, it has wide discretion to determine the sufficiency of such explanations. *M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 631 (Tex. App.–Houston [14th Dist.] 1992, writ denied). We review a trial court's decisions to submit or not submit jury instructions under an abuse of discretion standard. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990). An abuse of discretion occurs only when the trial court acts without reference to any guiding principles. *Id*. Because a trial court has no discretion to misstate the law, whether an instruction in a jury charge misstated the law is a question of law that we review de novo. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 525 (Tex. 2002). Jury charge error is only reversible if it was reasonably calculated to cause, and probably did cause, rendition of an improper judgment. *Reinhart v. Young*, 906 S.W.2d 471, 473 (Tex. 1995)

To preserve error regarding an improperly submitted jury instruction, a complaining party must have raised a specific objection at trial, and any objections not specifically raised at trial are considered waived. *See Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 43 (Tex. 2007); *see* TEX. R. CIV. P. 274. By requiring parties to clearly designate the error and to explain the grounds for complaint, rule 274 affords trial courts an opportunity to correct errors in the charge. *Castleberry v. Branscum*, 721 S.W.2d 270, 276 (Tex. 1986).

To preserve error regarding a court's failure to submit a proposed jury instruction,

the proposed jury instruction must have been submitted to the trial court in substantially correct form. TEX. R. CIV. P. 278. In this context, "substantially correct" does not mean that it must be absolutely correct, but rather that it must be "in substance, and in the main, correct . . . ." *Placencio v. Allied Indus. Int'l., Inc.,* 724 S.W.2d 20, 21 (Tex. 1987).

## IV. ANALYSIS

### A. Linda's First Proposed Instruction

We consider Linda's first two issues together. She first argues that the trial court erred in refusing to submit her proposed instruction concerning how to determine Christopher's "last known address."[3] Linda requested that the jury be instructed that "the last known address means the address of Christopher King as of December 7, 2004 as shown by the records of Countrywide Home Loans, Inc." The court denied Linda's proposed instruction and submitted an instruction stating that Christopher's last known address was 111 Driftwood Drive "unless he provided Countrywide a written change of address before December 2004."

The definition the court submitted comes from Texas Property Code section 51.0001(2)(A), which defines "debtor's last known address" for the purpose of mortgages secured by the debtor's residence. *See* TEX. PROP. CODE ANN. § 51.0001(2)(A) (Vernon 2007). This section became law in 2004 as part of a series of amendments to property code chapter 51. *See* Act of June 1, 2003, 78th Leg.,R.S.,ch. 554, § 1, secs. 51.0001(2)(A)-(B), § 2, sec. 51.002(e), 2003 Tex. Gen. Laws 1897, 1899. The definition

---

[3]Linda's brief phrases this as a dispute regarding the jury question. However, the question she proposed and the question the trial judge submitted were, for all relevant purposes, substantively identical. The major difference, and the subject of the arguments from both sides, concerns the instruction that she proposed to accompany her question and the instruction the trial judge submitted to the jury. Thus, we will treat this as a dispute over jury instructions.

of "last known address" that Linda proffered came from the statute in effect in 2003. *See* Acts 1987, 70th, Leg.,R.S.,ch. 540, § 1, (amended 2003) (current version at TEX. PROP. CODE ANN. § 51.002(e)). Linda asserts that the jury could have found that Countrywide had a notation of Christopher's change of address in their records and found for her under the 2003 law, even if they did not believe that he submitted his change of address in writing, as was required to find for her under the 2004 amendments.

Linda argues that using the 2004 amendments violated the Texas Constitution's prohibition on applying laws retroactively. *See* TEX. CONST. art. I, § 16. She claims that the trial court's definition was inappropriate. Christopher gave notice of his change of address to the bankruptcy court in May 2003, thus, she contends, the 2003 law should apply.

While the Texas Constitution prohibits applying laws retroactively, this prohibition does not extend to "remedial" statutes that do not disturb vested rights. *Rey v. Acosta*, 860 S.W.2d 654, 657 (Tex. App.–El Paso 1993, no writ). The term "remedial" can encompass many types of law. *See Pratt v. Story*, 530 S.W.2d 325, 328 (Tex. Civ. App.–Tyler 1975, no writ). Generally stated, a remedial statute is one that pertains to remedies or procedures. *Id*. More specifically, it can refer to laws intended to correct defects, mistakes, and omissions in the laws of the State. *Rey*, 860 S.W.2d at 657; *see Falls v. Key*, 278 S.W. 893, 896 (Tex. Civ. App.–Fort Worth 1925, writ dism'd). While the general presumption is that statutes only apply prospectively, this presumption does not apply to remedial statutes, which govern litigation from the date they become effective. *Reames v. Police Officers' Pension Bd. of Houston*, 928 S.W.2d 628, 631 (Tex. App.–Houston [14th Dist.] 1996, no writ); *see also Phil H. Pierce Co. v. Watkins*, 263 S.W. 905, 907 (Tex.

8

1924).

The 2004 amendments to section 51.002 and the addition of section 51.0001, added the specific process by which a debtor could change his last known address; this had not been addressed by the previous version of the statute. *See* Act of June 1, 2003, 78th Leg., R.S., ch. 554, § 1, secs. 51.0001(2)(A)-(B), § 2, sec. 51.002(e), 2003 Tex. Gen. Laws 1897, 1899. These amendments corrected minor procedural deficiencies in the previous law and should be classified as remedial. Thus, they should apply here unless it can be shown that doing so would disturb a vested right.

Linda states that she vicariously gained a vested right when Christopher notified the bankruptcy court of his change of address, and that applying the 2004 amendments, rather than using the earlier statute, disturbs this vested right. However, there is no vested right created by the expectation that existing law will continue to apply. *See Ex parte Abell*, 613 S.W.2d 255, 261-62 (Tex. 1981) (citing *City of Dallas v. Trammell*, 101 S.W.2d 1009, 1012-13 (Tex. 1937)).

> [A] right, in a legal sense, exists when, in consequence of the existence of given facts, the law declares that one person is entitled to enforce against another a given claim, or to resist the enforcement of a claim urged by another. Facts may exist out of which, in the course of time or under given circumstances, a right would become fixed or vested by operation of existing law, but until the state of facts which the law declares shall give a right comes into existence there cannot be in law a right . . .

*Id*. at 261 (quoting *Mellinger v. City of Houston*, 3 S.W. 249, 253 (Tex. 1887)). No one has a vested right to a particular remedy. *Aetna Ins. Co. v. Richardelle*, 528 S.W.2d 280, 284 (Tex. Civ. App.–Corpus Christi 1975, writ ref'd n.r.e.).

In this case, the change in law only effected the method for determining a debtor's "last known address." Neither Linda nor Christopher acquired a vested right from the

9

previous definition. The most that can be said is that they may have had an expectation of how their "last known address" would be determined if Countrywide sought to foreclose. However, that expectation should have changed as the law changed. The 2003 amendments to section 51.002 and the addition of section 51.0001 merely dealt with particular aspects of possible remedies and did not alter previously vested rights. Therefore, the application of the new sections is not barred by the Texas Constitution. They are applicable to this case.

Even though the 2004 amendments apply, Linda argues that her requested instruction was still "more correct" than the submitted instruction. Within the 2004 amendments, there are two definitions of "last known address," and the parties dispute which was applicable. Section 51.0001(2)(A) defines "last known address" as:

> for a debt secured by the debtor's residence, the debtor's residence address unless the debtor provided the mortgage servicer a written change of address before the date the mortgage servicer mailed a [required notice].

Section 51.0001(2)(B) defines it as:

> for a debt other than a debt described by Paragraph (A), the debtor's last known address as shown by the records of the mortgage servicer of the security instrument unless the debtor provided the current mortgage servicer a written change of address before the date the mortgage servicer mailed a [required notice].

Countrywide argues that at the time the mortgage was signed, it was a debt secured by the debtors' residence, and thus it would always remain. Which of these definitions applies, however, is a question we need not answer to resolve this appeal.[4]

---

[4]There are arguments favoring both sides. Two cases interpret "residence" for similar notice statutes to mean the place where the individual is living at the present, regardless of where the foreclosing party believed the debtor lived. *See Dickey v. McComb Dev. Co.*, 115 S.W.3d 42, 45 (Tex. App.–San Antonio 2003, no pet.); *Malnar v. Mechell*, 91 S.W.3d 924, 928-29 (Tex. App.–Amarillo 2002, no pet.); *see also Teachout v. Kitchen*, No. 14-03-00215-CV, 2004 WL 794383, at *2 (Tex. App.–Houston [14th Dist.] Apr. 15, 2004, no

10

If the mortgage was secured by his residence, then the trial court's instruction was correct and Linda's point of error would be overruled.  However, if the mortgage was not secured by Christopher's residence, Linda's objection was insufficiently specific, error would not be preserved, and Linda's point of error would be overruled.

At trial, Linda's only objection to the jury question was that it used a definition from the 2004 amendments.  Since those laws were applicable, the trial court was correct in denying this objection.  By not specifically objecting that the trial court was applying the wrong definition from the 2004 amendments, Linda did not give the trial court an opportunity to correct this mistake, and waived the issue on appeal.  Therefore, without addressing the underlying statutory question, we overrule Linda's second issue.

Linda's proposed instruction, based on the law as it was in May 2003, effectively applied only part of the definition in section 51.0001(2)(A).  Linda's proposed question was not inaccurate, but instead was incomplete.  By not including the requirement that a change of address be made in writing, however, she left out an essential element of the 2004 amendments.  *See* Act of June 1, 2003, 78th Leg.,R.S.,ch. 554, § 1, secs. 51.0001(2)(A)-(B), § 2, sec. 51.002(e), 2003 Tex. Gen. Laws 1897, 1899.

We find that, in context, the incompleteness of Linda's proposed question makes

---

pet.) (not designated for publication).  Under this analysis, the fact that Christopher was not living at 111 Driftwood Drive would be dispositive.

However, the specific wording of this statute seems to imply that it is more about what the mortgage company knows than where the individual is residing at the moment of default. Moreover, the policy implications of the former interpretation are problematic.  For instance, if a debtor had a mortgage on a non-residential property but began residing there, without the mortgage company's knowledge, they could then not properly foreclose on the property without sending a notice of default. But, it is unclear how the mortgage company would learn that the debtor was residing there.  Such an interpretation creates the opportunity for gamesmanship, where a defaulting debtor could simply claim residence at any non-residential property and sue the mortgage company if they foreclosed without providing him notice of default.

11

it substantively incorrect. *See* TEX. R. CIV. P. 278. The element that it is missing, the requirement for written notice, was present in the trial court's instruction, and Linda's counsel was advocating that it be removed. That Linda's proposed instruction happened to coincide with a portion of the applicable law is not enough to preserve error. We overrule the first two issues.

B. Linda's Second Proposed Instruction

In her final issue, Linda asserts that the trial court erred in refusing a second instruction she proposed. After the trial court held that the 2004 amendments apply, she requested an additional instruction which was taken verbatim from those amendments, now codified in property code section 51.0021:

> A debtor shall inform the mortgage servicer of the debt in a reasonable manner of any change of address of the debtor for purposes of providing notice to the debtor under Section 51.002.

TEX. PROP. CODE ANN. § 51.0021 (Vernon 2007).

Linda argues that under section 51.0021 the jury could have found that Christopher's notice to the bankruptcy court was a reasonable means of notifying Countrywide of his change of address, and thus Countrywide should have sent notice to him at the new address. According to Linda, section 51.0001 notwithstanding, section 51.0021 would allow a debtor to notify a mortgage servicer of a change of address in any reasonable way. This is a misreading of the statute.

In reading statutes, we are to presume that the legislature intended the entire statute to be effective. TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 2005). The definitions of "last known address" in section 51.0001 are applicable to the whole of chapter 51; however,

12

section 51.002 is the only section in the chapter where the phrase is used. Section 51.0021 only applies to section 51.002. *See* TEX. PROP. CODE ANN. § 51.0021.

There is no reason to read these two sections as conflicting.[5] Combined, they require that the notice be in writing, and that it be submitted in a reasonable manner. Notice that was reasonably submitted but unwritten, as well as notice that was written but unreasonably submitted, would fail statutory requirements.

Here, the jury was presented with uncontroverted evidence that Countrywide did not send any notice of foreclosure to the address of Christopher's parents. They were also given uncontroverted evidence that the only time Christopher tried to change his address was through his bankruptcy proceedings. If they concluded, as would have been required to answer "no" to the jury question, that his effort did not qualify as a written notice of a change of address, it would have likewise determined that it did not qualify as a written and reasonable notice. The trial court's rejection of the proposed instruction did not result in the rendition of an improper judgment; thus there is no reversible error. We overrule this issue.

## V. CONCLUSION

We affirm the judgment of the trial court.

---

[5]Both were created by the same section of the same legislative act. *See* Act of June 1, 2003, 78th Leg.,R.S.,ch. 554, § 1, secs. 51.0001, 51.0021.

ROSE VELA
Justice

Memorandum Opinion delivered and
filed this 17th day of July, 2008.